T.C. Memo. 2002-129

UNITED STATES TAX COURT

ALAN M. AND MARCIA F. SCHULMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9567-01L.                    Filed May 29, 2002.

Alan M. and Marcia F. Schulman, pro sese.

<u>James E. Schacht</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Petitioners were issued a notice of determination pursuant to section 6330(c)(3),[1] in which it was determined that a proposed levy should proceed for petitioners' unpaid tax liabilities.  Petitioners filed a petition for

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended.

judicial review under section 6330(d)(1)(A) from that determination. The only issue for decision is whether the settlement officer abused her discretion in failing to accept petitioners' collection alternative.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing of the petition, petitioners resided in Bayside, Wisconsin.

Petitioner Alan Schulman is employed as a C.P.A., and his wife is an educator. As of January 11, 2001, petitioners owed unpaid Federal income taxes, penalties, and interest as follows:

| Tax period | Unpaid assessment amount |
| --- | --- |
| 1993 | $4,701.17 |
| 1994 | 3,733.13 |
| 1995 | 6,102.33 |
| 1996 | 6,492.48 |
| 1997 | 8,226.46 |
| 1998 | 6,097.53 |

On January 11, 2001, respondent rejected petitioners' proposed installment agreement to pay $75 per month for their unpaid tax liabilities. Respondent estimated that petitioners' monthly income was $6,639, consisting of Mr. Schulman's salary of $3,856 and his wife's salary of $2,783. Respondent estimated

total monthly necessary living expenses of $5,861,[2] consisting

of:

| Item of expense | Expense allowed |
|---|---|
| National standard expenses | $1,473 |
| Housing/utilities | 1,440 |
| Transportation | 965 |
| Health care | 324 |
| Taxes (income and FICA) | 1,451 |
| Court-ordered payments | 150 |
| Child/dependent care | 0 |
| Life insurance | 58 |
| Secured/legally-perfected debts | 0 |
| Other | 0 |
| Total | 5,861 |

Respondent concluded that petitioners had the ability to pay $778

per month, the net difference between petitioners' monthly income

and their monthly expenses.

On April 9, 2001, respondent issued to petitioners a Letter

1058, Final Notice/Notice of Intent to Levy and Notice of Your

Right to a Hearing. In that notice, respondent proposed a levy

for the collection of $36,032.35 in unpaid income taxes,

penalties, and interest for the taxable years 1993, 1994, 1995,

1996, 1997, and 1998. On April 17, 2001, petitioners filed a

---

[2]In computing their proposed monthly installment payment, petitioners claimed monthly necessary living expenses as follows:

| Item of expense | Expense claimed |
|---|---|
| National standard expenses | $0 |
| Housing/utilities | 1,440 |
| Transportation | 965 |
| Health care | 324 |
| Taxes (income and FICA) | 1,451 |
| Court-ordered payments | 150 |
| Child/dependent care | 0 |
| Life insurance | 58 |
| Secured/legally-perfected debts | 0 |
| Other | 0 |
| Total | 4,388 |

Form 12153, Request for a Collection Due Process Hearing. Petitioners' attachment to that form states their disagreement with respondent's proposed monthly installment payment and includes "a listing of monthly expenses to provide information that will assist in reaching a compromise":

| Item of expense | Expense claimed |
|---|---|
| Housing and utilities | |
|   Rent | $1,355 |
|   Gas | 90 |
|   Electric | 70 |
|   Telephone | 100 |
|   Cable | 45 |
|   Water | 60 |
|     Total | 1,720 |
| | |
| Transportation | |
|   Gas, oil et al. | 195 |
|   Loans | 660 |
|   Insurance | 180 |
|     Total | 1,035 |
| | |
| Health care | |
|   Insurance | 455 |
|   Dental | 65 |
|   Prescription copays | 120 |
|     Total | 640 |
| | |
| Taxes | |
|   Federal | 805 |
|   Social Security | 385 |
|   Wisconsin | 295 |
|     Total | 1,485 |
| | |
| Court-ordered payments | 150 |
| Life insurance | 58 |
| Retirement | 120 |
| Computer loan | 55 |
| Credit card payments | 300 |
| Student loan payments | 220 |
| Loan not current being repaid $11,500 | |
| | |
| Total | 5,783 |

A telephone conference was held on May 21, 2001, and, thereafter, the parties exchanged correspondence.

On June 8, 2001, respondent's settlement officer sent petitioners the following letter regarding the proposed installment agreement:

> I have not received a more viable proposal for payment of your 1993 thru 1998 (and 1999) Federal Income Taxes.
>
> As we discussed during our telephone conference on 5/21/2001, although you do not demonstrate an ability to pay in full within the near future, an adjustment of your expenses should be made so that within one year you can commence substantial payments to allow payment in full of all the liabilities listed on the Notice of Intent and the 99 and prospective 2000 tax debt. An installment agreement in the amount of $75.00 could be initially allowed which would increase to $748.00 per month in one year. I am sorry, but the unsecured and incidental debt you list in your April 2001 financial statements * * * [is] not allowable when forbearance would result in payment in full of all tax liabilities, penalty and interest.
>
> The standards for allowable living expenses are prescribed in the Internal Revenue Manual are the guide used by both the Compliance and Appeals functions. I cannot * * * [forgo] these guidelines unless there is a special circumstance such as critical health needs.

In response to this letter, petitioners submitted a Form 433-A, Collection Information Statement for Individuals, dated June 20, 2001, in which they stated: "I would like to reach a compromise between the $75 that was previously agreed to + the $735 [sic] that the IRS has calculated." The Monthly Income and Expense Analysis, as part of that form, lists monthly income of $6,965, which consists of Mr. Schulman's salary of $3,965 and his wife's salary of $3,000, as well as the following expenses:

| Item of expense | Expense claimed |
|---|---|
| National standard expenses | $1,453 |
| Housing/utilities | 1,750 |
| Transportation | 1,030 |
| Health care | 695 |
| Taxes (income and FICA) | 1,485 |
| Court-ordered payments | 150 |
| Child/dependent care | |
| Life insurance | 60 |
| Secured/legally-perfected debts | |
| Other expenses | |
|   Loan payments | 910 (685) |
|   Student loans | |
|     Total | 7,533 |

On June 26, 2001, the settlement officer sent a letter to petitioners, which enclosed a list of the following allowable expenses:

| Item of expense | Expense allowed |
|---|---|
| National standard expenses | $1,473 |
| Housing/utilities | 1,214 |
| Transportation | 1,024 |
| Health care | 400 |
| Taxes (income and FICA) | 1,685 |
| Court-ordered payments | 150 |
| Child/dependent care | |
| Life insurance | 60 |
| Secured/legally-perfected debts | |
| Other expenses | |
|   Loan payments | 0 |
|   Student loans | 210 |
|     Total | 6,216 |

The letter states:

> I have received your updated collection information statement dated 6/20/01 and Mr. Schulmans' [sic] wage verification. Enclosed is a calculation of the allowable Necessary Living Expenses.

> Note that significant changes were made to the allowable amounts for health care, taxes and the student loan repayment is being allowed. The health care figure is based on an average monthly premium of 171.00 co-pays averaging 140.00 and the remaining is for miscellaneous medical supplies or needs. The monthly tax figure was adjusted because I believe you are under-estimating your monthly combined State and

Federal Income Tax accrual.  The school loan is being allowed because I am assuming it is for the education of either one of you for the purpose of enhancing your careers and earning capacity.  Student loans repayments for current or former dependents are not allowable unless a critical health situation exists.

Your gross income of $6965.00 minus the allowable expenses totaling $6216.00 leaves a monthly payment capability of $751.00.[3]  Again, the unsecured charge card or loan debt is not allowable.

Upon submission of your 1999 and 2000 Federal Income Tax Returns I would consider an agreement of $75.00 per month for one year, to be increased to $750.00 per month.  All tax returns must be filed timely during a pending agreement.

Should you have information to further substantiate some of the expenses you have claimed I will consider it.  I will wait until 7/10/2001 to hear from you regarding this proposal for resolution of your unpaid Federal Income Tax Accounts.

My tentative determination is to sustain the Notice of Intent to Levy absent filed returns and an agreement to pay in full as described above.  Your financial statement reveals you have the ability to pay in full by making substantial monthly payments.

On July 6, 2001, petitioners sent a letter in response to the settlement officer's letter:

I received your letter of June 26, 2001 and I must disagree with your findings.  I have made some adjustments to the form 433-A based on new information that I received and your changes and have included a new form 433-A.

The housing and utilities are based upon the actual monthly expenditures.  The health care is based upon actual monthly insurance premiums and out of pocket co-pays for prescription medications.  The loan payments

---

[3]Due to a subtraction error, this number should have been $749.

are also actual payments being made on outstanding credit card balances.

I am again requesting a compromise monthly payment at a level that can be made on a regular basis. If we are not able to reach a compromise, than I am requesting to take the next step in the appeal process.

The letter attached a new Form 433-A, which listed the following amounts as necessary living expenses:

| Item of expense | Expense claimed |
|---|---|
| National standard expenses | $1,473 |
| Housing/utilities | 1,715 |
| Transportation | 1,045 |
| Health care | 589 |
| Taxes (income and FICA) | 1,685 |
| Court-ordered payments | 150 |
| Child/dependent care | |
| Life insurance | 60 |
| Secured/legally-perfected debts | |
| Other expenses | |
| Loan payments | 685 |
| Student loans | 210 |
| Total | 7,612 |

On July 19, 2001, a Form 3193, Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, was issued to petitioners in which the Appeals Office "sustained" the notice of intent to levy and verified that "All administrative procedures were followed prior to issuance."[4] On July 30, 2001, petitioners filed a timely petition with this Court from that determination. On August 28, 2001, petitioners filed an amended petition in which they disagreed with the settlement officer's proposed monthly installment payment and

_____

[4]An attachment to this form describes the determination to sustain the levy and is attached to this opinion as an appendix.

alleged that she failed to compromise or to otherwise accept their claimed expenses.

OPINION

A taxpayer is entitled to notice before levy and notice of the right to a fair hearing before an impartial officer of the Internal Revenue Service Office of Appeals.  Secs. 6330(a) and (b), 6331(d).  If the taxpayer requests a hearing, he may raise in that hearing any relevant issue relating to the unpaid tax or the proposed levy, including challenges to the appropriateness of the collection action and "offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise."  Sec. 6330(c)(2)(A).  A determination shall be made which shall take into consideration those issues, and "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary."  Sec. 6330(c)(3).

In the instant case, petitioners raise only issues relating to collection alternatives, specifically whether the settlement officer failed to consider certain expenses that petitioners claimed as part of their proposed installment agreement.[5]

---

[5]The notice of determination states that petitioners requested an offer in compromise; however, petitioners do not
(continued...)

Because petitioners do not dispute the existence or amount of their underlying tax liabilities, we review the determination for an abuse of discretion. Lunsford v. Commissioner, 117 T.C. 183, 185 (2001); Nicklaus v. Commissioner, 117 T.C. 117, 120 (2001).

The settlement officer's consideration of petitioners' collection alternative, an installment agreement, was reasonable. Her determination was based on a financial analysis of petitioners' monthly income and expenses and their ability to pay. She allowed certain expenses in amounts greater than those originally claimed by petitioners, e.g., taxes. And, her disallowance of claimed expenses was based on applicable procedures contained in the Internal Revenue Manual.[6] The

---

[5](...continued)
raise any issues relating to any offer in compromise, and the record does not show that they filed a Form 656, Offer in Compromise. Indeed, at trial, Mr. Schulman indicated his unwillingness to satisfy the procedures applicable to an offer in compromise.

[6]The Internal Revenue Manual provides procedures for proposed installment agreements. See 2 Administration, Internal Revenue Manual (CCH), sec. 5.15.1 to 5.15.1.4, at 17,653-17,660. Those procedures contain guidelines for allowable expenses, which include necessary and conditional expenses. Necessary expenses are those that meet the necessary expense test; i.e., "they must provide for a taxpayer's and his or her family's health and welfare and/or the production of income" and they must be reasonable. There are three types of necessary expenses: (1) Those based on national standards, e.g., food, housekeeping supplies, apparel and services, and personal care products and services; (2) those based on local standards, e.g., housing, utilities, and transportation; and (3) other expenses, which are not based on national or local standards, e.g., health care. Conditional expenses are those expenses that do not meet the
(continued...)

settlement officer informed petitioners that, under those procedures, she could not allow expenses for unsecured debt as they had claimed. She also informed them that certain other expenses they had claimed had not been substantiated. She provided petitioners considerable time and opportunity to submit additional information to substantiate expenses they had previously claimed, but which were disallowed, and to submit evidence of any "special circumstance". The settlement officer offered a 1-year period for petitioners to modify their spending habits and lifestyle before full monthly payments would be required.

Petitioners submitted additional information, however, they continued to claim expenses which were previously disallowed and which they had been told could not be allowed. They did not provide substantiation for certain expenses, e.g., medical expenses, but, nevertheless, they continued to claim those expenses. Petitioners' letter of July 6, 2001, shows clearly that an installment agreement could not be reached by the parties given the wide disparity in petitioners' claimed expenses and the expenses allowable under the Internal Revenue Manual guidelines. Indeed, in that letter petitioners claimed expenses in amounts

---

[6](...continued)
necessary expense test, but which may be allowable if the tax liability, including projected accruals, can be fully paid within five years.

greater than those they had claimed in their June 20, 2001, letter. Given those circumstances, the determination to sustain the levy was not an abuse of discretion.

The crux of petitioners' contentions in this case is that certain expenses should have been allowed by the settlement officer in greater amounts. Petitioners dispute two items which the settlement officer refused to allow additional expenses for. First, petitioners contend that the expenses for housing and utilities should have been based on the local standards applicable to Ozaukee County, Wisconsin, and not Milwaukee County, Wisconsin, since "Our house is less than one half mile from Ozaukee county and is more consistent with the costs of that county than with those of Milwaukee county."[7] Petitioners propose an average of the allowable expense standards for the two counties; i.e., $1,394, be used to determine a proper monthly installment payment. Second, petitioners claim that the settlement officer "arbitrarily" allowed $400 of medical expenses, whereas she should have allowed $695, the amount petitioners listed on the June 20, 2001, Form 433-A that they

---

[7]The local standards for housing and utilities for calendar year 2002 list the allowable expenses for a family of four in Milwaukee County, Wisconsin, at $1,255, and in Ozaukee County, Wisconsin, at $1,533.

submitted.[8]  We do not find that the settlement officer abused her discretion in disallowing petitioners' claimed expenses.

The settlement officer was entitled to rely on the standards applicable to Milwaukee County.  Petitioner husband admitted at trial that both he and his wife lived and worked in Milwaukee County.  Petitioners did not introduce any evidence of any meaningful ties to Ozaukee County, other than the relative proximity of their residence.  We cannot agree that the settlement officer abused her discretion in relying on the housing and utility standards applicable to Milwaukee County.  And, it was not an abuse of discretion for her to refuse to accept what petitioners claimed to be their actual housing and utility expenditures.  The expenses claimed by petitioners exceeded the applicable local standards for housing and

---

[8]Petitioners now propose additional amounts of medical expenses, increasing their total to $726, as well as an increase in the tax expenses allowed from $1,685 to $2,065.  We decline to discuss those additional amounts, since they were not raised before the settlement officer and were not raised at trial.  "It is the responsibility of the taxpayer to raise all relevant issues at the time of the pre-levy hearing."  H. Conf. Rept. 105-599, at 266 (1998), 1998-3 C.B. 755, 1020.  In addition, petitioners have submitted with their brief a revision of the expenses used by the settlement officer which shows total expenses of $7,071.  Petitioners propose "a monthly payment of $300 as a way of settling this case".  Again, this revision is relevant, for purposes of our review, only to the extent it was proposed to the settlement officer.

utilities.  See 2 Administration, Internal Revenue Manual (CCH), sec. 5.15.1.3.2.2 (2), at 17,657 ("Taxpayers will be allowed the local standard or the amount actually paid, whichever is less").

The settlement officer allowed $400 of medical expenses on the basis of average monthly premiums, copays, and miscellaneous medical supplies or needs.  Petitioners claim that $695 in medical expenses should have been allowed, which amount they claim to be their "actual out-of-pocket health insurance, copays, things like that."  However, it is clear that the settlement officer did not accept those additional amounts, because petitioners provided no substantiation.  See 2 Administration, Internal Revenue Manual (CCH), sec. 5.15.1.3(8)(a), at 17,655: "A taxpayer is required to provide evidence and justification for claimed expenses, except National Standards".[9]  Petitioners presented no evidence at trial or on brief to otherwise substantiate their expenses.[10]  We hold that the settlement

---

[9]See also sec. 301.6330-1(e)(1), Proced. & Admin. Regs.: "Taxpayers will be expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing."

[10]At trial, Mr. Schulman testified:

Q    Mr. Schulman, did you ever provide Ms. Wastian any evidence of your medical expenses?

A    Yes.  They're on a schedule.

Q    But did you provide them to her when you conferred with her?

(continued...)

officer did not abuse her discretion in computing petitioners'
allowable monthly expenses.

On the basis of the record as a whole, it is clear that the
parties were, and are still, unable to agree to an appropriate
monthly installment payment.  The settlement officer's proposed
monthly installment payment was computed under the guidelines
provided in the Internal Revenue Manual.  We have reviewed those
computations, and we find them to be reasonable.  The settlement
officer's disallowance of petitioners' claimed expenses was not
arbitrary, and she gave due consideration to each of the
proposals they submitted.  We hold that the settlement officer
did not abuse her discretion, and respondent may proceed with the
proposed levy action.  See <u>Estate of Doster v. Commissioner</u>, T.C.
Memo. 2002-2 ("To the extent respondent considered installment

---

[10](...continued)
A    I don't know if they were given to her, but
somebody in the Service, in the office, had them, yes.
In a notice to Ms. Marge Flaig, who, I guess, was the
revenue officer who you had before, in an attachment to
Form 12153 in April of 2001, it listed health care for
insurance, health insurance, dental and prescription
copays.

            *    *    *    *    *    *    *

Q    And did you submit any additional information
beyond this, in terms of where these line items
consisted of?

A    No.  Nobody ever asked me.

payments as a collection alternative, there was no abuse of discretion").

<u>An appropriate decision will be entered permitting respondent to proceed with collection</u>.

APPENDIX
Attachment - 3193
Notice of Determination


Settlement Officer Ursula Kordasiewicz Wastian has not had prior contact with the taxpayers concerning this specific tax return or the years listed.  No other Collection Due Process Appeals are pending at this time for the specific tax returns or years listed.

Notice of Intent to Levy Issued on 4/9/2001.  The taxpayers submitted a Request for a Collection Due Process Hearing on 4/14/2001.

ISSUES RAISED BY THE TAXPAYER

The taxpayer is requesting an installment agreement or an offer in compromise be granted based on financial information he submitted to the compliance employee and again to the Settlement Officer.  The Service does consider both collection alternatives after an analysis of income and monthly expenditares [sic] claimed on a Collection Information Statement.  Certain restrictions do apply in that expenses considered reasonable and allowable under the Internal Revenue Manual are granted and the taxpayer must be in full compliance with all Federal Tax Return filing requirements.

The taxpayers submitted financial information to the compliance function and to appeals which contained expenses not normally allowable in the area of unsecured debt.  The Internal Revenue Manual permits a taxpayer a one year period of time to adjust their spending habits and life-style to allow for payment in full of accrued liabilities over the life of an installment agreement. A proposal of initial payments in the amount of $75.00 per month to be increased to $750.00 at the one year anniversary was made to the taxpayers.  They do not agree with this proposal and did not counter with anything more viable.

Additionally, the Service could not seriously entertain an installment agreement or an offer in compromise until the taxpayer became current with all filing requirements.  The 1999 and 2000 Federal Income Tax Returns remain unfiled.

VERIFICATION OF LEGAL AND PROCEDURAL REQUIREMENTS

A review of the compliance case history reveals the Revenue Officer communicated the Services' policy regarding allowable

expenses and current compliance to the taxpayer prior to issuance of the Notice of Intent to Levy.  An independent review of this determination was also conducted per the Internal Revenue Manual and was sustained.  Sources of collection were identified prior to issuance of the Notice of Intent to Levy.  All administrative procedures were followed.

BALANCING THE NEED FOR EFFICIENC [sic] COLLECTION WITH THE CONCERN THAT COLLECTION IS NO MORE INTRUSIVE THAN NECESSARY

The taxpayers has [sic] been given repeated explanations and policy guidelines relative to allowable expenses and current compliance.  Both the compliance employee and Settlement Officer have provided the taxpayer with alternatives to the levy however he insists on more reasonable terms.  The financial information reveals an ability to pay all the subject taxes, penalty and interest in full by making substantial monthly payments after giving one year to adjust his life-style.  Resolving the unsecured charge card debt and excessive housing expenses will permit substantial payments.  The compliance issue is also a road-block to these collection alternatives at this time.  Levy activity at this time is not considered overly intrusive considering the attempts made by the Service to resolve this situation and lack of compliance with filing Federal Income Tax Returns in a timely manner.

RECOMMENDATION

The Notice of Intent to Levy is sustained.