T.C. Memo. 2020-123

UNITED STATES TAX COURT

KENNETH GUSTAF SWANBERG, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10266-19L.                          Filed August 25, 2020.

Kenneth Gustaf Swanberg, pro se.

Stephen C. Welker and Bartholomew Cirenza, for respondent.

MEMORANDUM OPINION

LAUBER, Judge:  In this collection due process (CDP) case, petitioner

seeks review pursuant to section 6330(d)(1)[1] of the determination by the Internal

_____

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*2] Revenue Service (IRS or respondent) to uphold a notice of intent to levy. The IRS proposed the levy to facilitate collection of petitioner's Federal income tax liability for 2013. Respondent has moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that his determination to sustain the proposed collection action was proper as a matter of law.

Petitioner urges that the settlement officer (SO) erred in (1) declining to offset against his 2013 tax liability alleged overpayment credits from other years and (2) determining his eligibility for an installment agreement (IA). We conclude that petitioner had no available credits from other years and that the SO did not abuse her discretion in calculating his ability to pay. We will thus grant respondent's motion and sustain the collection action for 2013.

## Background

The following facts are based on the parties' pleadings and motion papers, including the attached declarations and exhibits. See Rule 121(b). Petitioner resided in Virginia when he filed his petition.

Petitioner filed a return for 2013 but failed to pay in full the tax shown as due. The IRS assessed the resulting liability, which petitioner did not pay upon notice and demand. On July 13, 2017, in an effort to collect this unpaid liability, the IRS issued him a Letter 11, Notice of Intent to Levy and Notice of Your Right

**[*3]** to a Hearing.  As of that date, petitioner's outstanding liability for 2013 was $20,577.

Petitioner timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing.  He stated that he could not pay the balance and expressed interest in an offer-in-compromise (OIC) or IA.  He also asserted that the proposed levy was premature, alleging that the IRS had failed to adjust his tax liabilities for other tax years going back to 2000.  He did not challenge the liability as reported on his 2013 return.

The case was assigned to an SO in the IRS Appeals Office in Holtsville, New York.  She reviewed petitioner's administrative file and confirmed that the 2013 liability had been properly assessed and that all other requirements of applicable law and administrative procedure had been met.  The SO examined petitioner's account transcripts for 2000 and the other years for which he alleged outstanding credits.  The transcripts showed what adjustments had been made, where all payments had been applied, and that no available credit existed.

On October 30, 2018, the SO sent petitioner a letter scheduling a telephone conference for November 28, 2018.  The letter instructed him to complete Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and Form 656, Offer in Compromise, if he wished the SO to consider

[*4] collection alternatives. She attached to her letter copies of petitioner's account transcripts for the years for which he alleged overpayment credits.

The hearing was held as scheduled on November 28, 2018. Adverting to petitioner's transcripts, the SO explained that he once had a credit in his 2000 account but that it had been applied to other years and was not available to be carried to 2013. Petitioner insisted that the IRS had made errors with respect to those intervening years, but the SO explained that the only year before her was 2013. Petitioner stated that he had few assets and was working only part time. The SO replied that he could request a collection alternative but he needed to provide financial information.

On March 12, 2019, the SO received a Form 433-A on which petitioner reported monthly income of $6,352 (consisting of wages, Social Security income, and pension payments) and monthly expenses of $6,854. Petitioner's bank statements showed that he was also receiving disability benefits from the Veterans Administration (VA benefits), and the SO adjusted his monthly income upward to account for them. She disallowed a $600 monthly expense for a whole life insurance policy and adjusted downward petitioner's reported expenses for food, housing, and other items. She called petitioner to explain her calculations and requested additional substantiation of certain expenses.

**[*5]** Petitioner returned the SO's call, contending that his VA benefits should be excluded from the computation. The SO replied that VA benefits, while excludable from taxable income, were nevertheless relevant in determining ability to pay. After allowing additional items petitioner had substantiated, including expenses for his son's medical care, the SO calculated monthly income of $7,768 and monthly expenses of $5,027, yielding an ability to pay $2,741 per month.

The SO expressed willingness to consider an IA calling for monthly payments of $2,741, noting that petitioner's total outstanding tax liabilities for all open tax years exceeded $126,000. Petitioner disputed that figure, reiterating his contention that the IRS had made errors in computing his tax for prior years. The SO reminded him that she could consider liability disputes regarding 2013 only. After the call she sent petitioner another set of account transcripts and a table showing her calculation of his monthly income and expenses.

On May 3, 2019, petitioner called the SO, reiterating his contention that the VA benefits should be ignored and questioning the disallowance of expenses for life insurance and his son's medical care. The SO replied that whole life insurance payments were not allowable in the ability-to-pay calculation and that her calculations already reflected the cost of his son's medical care. Petitioner again asserted that his account transcripts were incorrect. The SO offered to answer ques-

[*6] tions about them but reiterated that she could consider liability disputes for 2013 only, advising him to seek help from the Taxpayer Advocate Service regarding other years. The SO offered an IA with monthly payments of $2,471, advising that if petitioner declined that offer, she would close the case. He declined that offer.

On May 14, 2019, the IRS issued petitioner a notice of determination sustaining the levy. Petitioner filed a timely petition in which he disagreed with the SO's resolution of the issues discussed above.[2] On February 13, 2020, respondent filed a motion for summary judgment, to which petitioner timely responded.

Discussion

A. Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Under Rule 121(b), we may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992),

---

[2]In his hearing request petitioner had expressed interest in an OIC, but he neither submitted Form 656 nor made an offer. See Reed v. Commissioner, 141 T.C. 248, 254 (2013) ("A taxpayer must propose an OIC for it to be considered during the collection hearing."), supplemented by T.C. Memo. 2014-41. We accordingly address that issue no further.

**[\*7]** aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Ibid. However, the nonmoving party may not rest upon the mere allegations or denials in his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); see Sundstrand Corp., 98 T.C. at 520. Finding no material facts to be in dispute, we conclude that this case may be adjudicated summarily.

B.    Standard of Review

Where the validity or amount of the taxpayer's underlying tax liability is properly at issue, we review the IRS' determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the taxpayer's underlying liability is not before us, we review the IRS determination for abuse of discretion only. Id. at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

Petitioner did not dispute, during the hearing or in his petition, the tax liability that he reported for 2013. Rather, he contends that the SO erred in refusing to apply, against that 2013 liability, a credit balance that he believes should be available in other years. There is some uncertainty in our precedents as to whether

**[*8]** a de novo or an abuse-of-discretion standard of review applies in a situation such as this.[3] As we explain below, we conclude that the SO answered correctly the credit carryforward question that petitioner raises. Because we would sustain her resolution of this issue under either standard of review, we need not decide which applies. See Dixon v. Commissioner, 141 T.C. 173, 184 & n.6 (2013); Estate of Adell v. Commissioner, T.C. Memo. 2014-89, 107 T.C.M. (CCH) 1463, 1466; Golub v. Commissioner, T.C. Memo. 2013-196, 106 T.C.M. (CCH) 173, 174-175. With regard to matters other than petitioner's claim of overpayment credits, we review the SO's action for abuse of discretion.

---

[3]In Landry v. Commissioner, 116 T.C. 60 (2001), we applied a de novo standard of review where the taxpayer challenged the IRS' failure to apply an overpayment credit from another year. We concluded that this was a challenge to the taxpayer's underlying tax liability, i.e., "the amount unpaid after application of credits to which * * * [the taxpayer was] entitled." Id. at 62. On the other hand, we have applied abuse-of-discretion review when considering challenges to the IRS' application of a tax payment. See Melasky v. Commissioner, 151 T.C. 89, 92 (2018) (holding that a dispute as to whether a payment was properly credited to the taxpayer's account for a particular year is not a challenge to his underlying liability), aff'd, 803 F. App'x 732 (5th Cir. 2020); Orian v. Commissioner, T.C. Memo. 2010-234, 100 T.C.M. (CCH) 356, 359; Kovacevich v. Commissioner, T.C. Memo. 2009-160, 98 T.C.M. (CCH) 1, 4 & n.10.

**[*9]** C.      <u>Analysis</u>

      1.      <u>Overpayment Credits</u>

Our jurisdiction in CDP cases generally does not permit us to consider matters regarding nondetermination years, that is, tax years that are not the subject of the collection action before us. But we may consider facts and issues from other years to the extent they "are relevant in evaluating a claim that an unpaid tax has been paid." <u>Freije v. Commissioner</u>, 125 T.C. 14, 27 (2005). An available credit from another year is a fact that may affect the taxpayer's correct liability for the year before the Court. <u>Weber v. Commissioner</u>, 138 T.C. 348, 371-372 (2012). But a credit must actually exist in order to constitute an "available credit." A mere claim for a credit "is not an '<u>available</u> credit,'" and such a claim "need not be resolved before the IRS can proceed with collection of the liability at issue." <u>Id.</u> at 372; <u>see</u> <u>Del-Co W. v. Commissioner</u>, T.C. Memo. 2015-142, 110 T.C.M. (CCH) 119, 120-121.

At the time of petitioner's hearing his account transcripts showed that he had no available credit to be applied to his 2013 tax year. He submitted no evidence of any payments for 2013 and offered only vague disputes with respect to prior years. The SO was not required to consider the merits of those arguments.

[*10] See Precision Prosthetic v. Commissioner, T.C. Memo. 2013-110; Everett Assocs., Inc. v. Commissioner, T.C. Memo. 2012-143.

We likewise lack jurisdiction to consider these matters. We may consider "whether a credit available from another tax year should be applied to the taxpayer's liability for the year before the Court" only if that other credit "indisputably exists." Del-Co W., 110 T.C.M. (CCH) at 120. Petitioner does not have a credit that "indisputably exists," and we are unable to address his challenge to tax liabilities for years not before us. See Weber, 138 T.C. at 366.

2. Other Issues

In deciding whether the SO abused her discretion in any other respect, we consider whether she: (1) properly verified that the requirements of any applicable law or administrative procedure had been met, (2) considered any relevant issues petitioner raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3). Our review of the record establishes that the SO properly discharged all of her responsibilities under section 6330(c). She verified that petitioner's tax liability for 2013 had been properly assessed, and she correctly determined that he had no "available credit" to offset against that liability.

**[\*11]** Section 6159 authorizes the Commissioner to enter into an IA if he determines that it will facilitate full or partial collection of a taxpayer's unpaid liability. See Thompson v. Commissioner, 140 T.C. 173, 179 (2013). Subject to exceptions not relevant here, the decision to accept or reject an IA lies within the Commissioner's discretion. See Rebuck v. Commissioner, T.C. Memo. 2016-3; Kuretski v. Commissioner, T.C. Memo. 2012-262, aff'd, 755 F.3d 929 (D.C. Cir. 2014); sec. 301.6159-1(a), (c)(1)(i), Proced. & Admin. Regs. As a rule, an SO may "accept, at a minimum, a monthly payment equal to the excess of a taxpayer's monthly income over the taxpayer's allowable expenses." Boulware v. Commissioner, T.C. Memo. 2014-80, 107 T.C.M (CCH) 1419, 1426, aff'd, 816 F.3d 133 (D.C. Cir. 2016); see Bero v. Commissioner, T.C. Memo. 2017-235; Friedman v. Commissioner, T.C. Memo. 2013-44. We will not substitute our judgment for the SO's, recalculate the taxpayer's ability to pay, or independently determine what would be an acceptable offer. See Thompson, 140 T.C. at 179; Lipson v. Commissioner, T.C. Memo. 2012-252.

An SO does not abuse her discretion by adhering to provisions of the Internal Revenue Manual (IRM) governing acceptance of collection alternatives. See Veneziano v. Commissioner, T.C. Memo. 2011-160, 102 T.C.M. (CCH) 22, 24; Etkin v. Commissioner, T.C. Memo. 2005-245, 90 T.C.M. (CCH) 417, 421;

[*12] Schulman v. Commissioner, T.C. Memo. 2002-129, 83 T.C.M. (CCH) 1738, 1742 & n.6.  We find that the SO properly adhered to relevant IRM provisions in determining petitioner's monthly income and expenses.

As a general rule, "all household income * * * will be used to determine the taxpayer's ability to pay."  IRM pt. 5.15.1.12(1) (Aug. 29, 2018).  Income is includible in determining ability to pay even if it is not subject to income tax.  See id. pt. 5.15.1.12(2) (stating that household income includes amounts received from pensions, Social Security, and profit sharing plans); see Ligman v. Commissioner, T.C. Memo. 2015-79, 109 T.C.M. (CCH) 1405, 1407 (ruling that benefits not listed in the IRM were includible for purposes of determining eligibility).  The SO did not abuse her discretion by including petitioner's VA benefits in his monthly income.  See Matthews v. Commissioner, T.C. Memo. 2015-225, 110 T.C.M. (CCH) 483, 488 (ruling that an SO did not abuse her discretion by including VA benefits when calculating ability to pay).  The SO properly disallowed petitioner's claimed expenses for life insurance, see IRM pt. 5.15.1.26 (Oct. 2, 2012), and she allowed all other expenses for which he supplied verification.

Finding no abuse of discretion in this or any other respect, we will grant summary judgment for respondent and sustain the proposed collection action.  In responding to the motion for summary judgment petitioner stated that his income

**[*13]** has changed because he recently retired from his part-time job.  If petitioner's financial circumstances have changed since the CDP hearing, he is free to submit to the IRS at any time, for its consideration and possible acceptance, a collection alternative in the form of an OIC or an IA, supported by updated financial information.

To implement the foregoing,

An appropriate order and decision will be entered for respondent.