KREIT MECHANICAL ASSOCIATES, INC., PETITIONER
*v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 14692–09L.          Filed October 3, 2011.

P filed a petition for review pursuant to sec. 6330, I.R.C., in response to R's determination to proceed with collection actions. P sought a collection alternative and submitted an offer-in-compromise. R rejected the offer, concluding that the entire amount due was collectible after R found that a 75-percent discount of P's accounts receivable was inappropriate in valuing P's assets and the offer-in-compromise. *Held*: R's determination is sustained.

123

*Cruz Saavedra*, for petitioner.
*Nicole C. Lloyd*, for respondent.

WHERRY, *Judge*: This case is before the Court on a petition for review of a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination).[1] Petitioner seeks review of respondent's determination to proceed with a proposed levy.

The collection action stems from unpaid employment taxes reported on Form 941, Employer's Quarterly Federal Tax Return, penalties under section 6656, and additions to tax under section 6651(a)(2) with respect to the third quarter of 2005 and all four quarters of 2006. The issue for decision is whether respondent's settlement officer abused her discretion in rejecting petitioner's offer-in-compromise and determining the proposed collection action was appropriate.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulations, with accompanying exhibits, are incorporated herein by this reference. At the time the petition was filed, petitioner had its principal business address in Los Angeles, California. During the periods at issue Ephraim Kreitenberg (Mr. Kreitenberg) was the president and coowner of petitioner. Shaindee Kreitenberg (Mrs. Kreitenberg) was vice president and coowner of petitioner. Petitioner is in the commercial plumbing business and operates as a subcontractor.

On February 18, 2007, petitioner filed delinquent Forms 941 for the quarters ending September 30, 2005, and March 31, June 20, September 30, and December 31, 2006. Taxes, penalties, additions to tax, and interest were assessed on May 28, 2007.

On May 29, 2007, petitioner was issued a Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing (levy notice). The levy notice stated that respondent intended to levy to collect petitioner's unpaid liabilities, including employment taxes, penalties, and interest, totaling $717,818.23 and that petitioner was entitled to a hearing with respondent's Office of Appeals. On June 26, 2007, petitioner submitted a timely request for a collection due process

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

(CDP) hearing and stated that it proposed to make an offer-in-compromise as an alternative to the levy.

On July 18, 2007, the Appeals settlement officer assigned to the case, Alicia A. Flores (Officer Flores), mailed petitioner a notice that the Appeals Office had received petitioner's CDP hearing request and scheduled a telephone conference. On September 4, 2007, petitioner submitted a completed Form 656, Offer in Compromise, based on doubt as to collectibility. Petitioner offered $369,192.27 [2] payable under a deferred periodic payment arrangement of $3,073.60 per month for 120 months.

Attached to the offer-in-compromise petitioner included a completed Form 433–B, Collection Information Statement for Businesses. As required on the Form 433–B, petitioner listed accounts receivable of: $35,664, $604,364, $259,580, and $165,800. Petitioner then listed the total accounts receivable as $250,000, not $1,065,408 (the value of adding together the listed accounts receivable). In the attached "Explanation of determination of value of accounts receivable", petitioner explained how it arrived at $250,000 and listed the reasons it felt the face value of the accounts receivable should not be taken into account. Petitioner stated that

Billings to the general contractor by the taxpayer (subcontractor) are based on industry values and standards. They are subject to approval by the project manager, the general contractor and the owner of the project. They also involve "joint check" payments to suppliers where applicable.[3]

For these reasons petitioner believed that the accounts receivable should be discounted by approximately 75 percent. Petitioner submitted the relevant applications for payments related to the accounts receivable listed in the offer-in-compromise. All of the applications for payments include certain

---

[2] Petitioner calculated the amount offered of $369,192.27 as the amount required to fully pay the trust fund portion (i.e., the amount withheld from employee paychecks); however, when we add the proposed installment payments we get $368,832.20. As petitioner offered the $369,192.27, we shall use that number. We note that because petitioner was required to match this amount, the offer-in-compromise will not make the United States whole. We also note that Mr. and Ms. Kreitenberg were potentially personally liable for the trust fund amount under sec. 6672.

[3] At trial Mr. Kreitenberg explained that a joint check was a check written to more than one person. In their case the general contractor would write it to both petitioner and their supplier in order to ensure that the supplier would get paid by petitioner.

adjustments to the bill for "change orders" and "retention" percentages. [4]

On September 19, 2007, respondent's Appeals Office sent petitioner a letter stating that the Appeals Office had received the offer-in-compromise and that the offer met the standards for processing. At trial Officer Flores testified that she reviewed all of the information petitioner submitted in the offer-in-compromise package and that she was aware of the reasons petitioner stated for discounting the accounts receivable.

On May 28, 2008, petitioner's counsel sent Officer Flores a facsimile (fax) regarding prior telephone conversations. It referenced conversations in which Officer Flores had stated that the offer-in-compromise package could not be processed unless petitioner was brought current on its deferred payments under the agreement and remedied the compliance problems for its Forms 941 for the quarters ended March 30 and June 30, 2007. The fax stated that petitioner would resolve those issues by June 9, 2008. On June 9, 2008, petitioner's counsel sent Officer Flores a fax stating that payments to his trust account of $3,076.60 and $1,540.01 had been made in order to bring the deferred payments current and pay the tax reported on Forms 941 for 2007. With his receipt of these checks he indicated his trust fund account now had sufficient funds to bring the deferred payments for October 2007 through May 19, 2008, current ($24,612.80) and pay the 2007 Form 941 tax due of $1,540.01. The funds were then tendered to respondent from the trust fund account on June 11, 2008.

On July 29, 2008, Officer Flores requested additional information from petitioner in order to consider the offer-in-compromise. Officer Flores inter alia requested: Bank statements for the corporate payroll and general account, Forms 1099, description of all machinery and equipment and inventory, depreciation schedules, explanations of cash withdrawals, current accounts receivable, notes evidencing any loans from shareholders or family members, and a current copy of the profit and loss statement. She also requested per-

_____

[4] The common meaning of "change order" in construction is the process in which work is added to or deleted from the original scope of the contract. "Retention" commonly refers to the amount held back from the requested payment under the contract to ensure that the contractor or subcontractor completes the work; this amount is then paid after the retention period passes.

sonal information from Mr. and Mrs. Kreitenberg, including: Forms W–2, Wage and Tax Statement, for 2007, a list of investments, and their personal bank statements. In this letter, Officer Flores also asked petitioner to

Identify if any of the receivables from the current list have been pledged as collateral on a loan or sold at a discount. Provide an aging report to show how much each vendor is owed, and how much of the balance for each vendor is overdue. Explain in a separate report the amount of the receivables which are obligated to the suppliers. Do not discount the amounts for purposes of the offer.

On August 21, 2008, petitioner responded to almost all of Officer Flores' requests. In the cover page to the packet, petitioner stated that "No receivables are pledges [sic] as collateral. No loans except from shareholders or other family members."

On February 2, 2009, Officer Flores sent petitioner a letter requesting updated information because "The information has become outdated due to significant delays which were not caused by the taxpayers. [sic]". At trial Officer Flores acknowledged that she "had a really high inventory that really kept * * * [her] from working this, this case a lot sooner."

On February 23, 2009, petitioner submitted a package of additional information to Officer Flores. The package included representations regarding its accounts receivable, stating that it was owed $467,000 for the UCLA Life Sciences Replacement Building and $291,457 for the LAPD Police Headquarters Facility. Petitioner included its profit and loss statement for 2008. All of petitioner's profit and loss statements can be summarized as follows: [5]

|                      | 2006        | 2007        | 2008        |
| -------------------- | ----------- | ----------- | ----------- |
| Operating income     | $3,346,102  | $2,770,370  | $7,656,198  |
| Expenses             | (3,547,660) | (3,180,016) | (7,243,454) |
| Other income or loss | 2,522       | 154         | (526)       |
| Net income           | (199,036)   | (409,492)   | 412,218     |

On April 1, 2009, Officer Flores sent petitioner a letter rejecting the offer-in-compromise for a variety of reasons. In the letter, Officer Flores explained that "Although you did not provide all of the records I requested (explained below),

---

[5] The values in all tables have been rounded to the nearest whole number.

there is sufficient information given to support the rejecting of the offer * * * because * * * an amount larger than the offer appears to be collectible." She further explained that

The Profit & Loss Statement showed that the net income for the twelve months ending in 2008 was $412,218.04. I also determined that the expenses reported for Charitable Donations in the amount of $14,914.00 and Meals & Entertainment in the amount of $1,518.37 are not allowable. The credit available from corporate credit cards is $2,605. The total value of the Accounts Receivables is $758,457 for [sic] which you stated have not been sold or pledged as collateral.

She went on to explain that there were additional facts supporting the rejection of the offer-in-compromise. First, petitioner did not provide its bank statements for the general account, and Officer Flores believed that there was an impermissible commingling of the personal expenses of Mr. and Mrs. Kreitenberg. Second, petitioner never provided a valuation of the business. Third, Officer Flores noted the great increases in petitioner's gross receipts. Fourth, petitioner did not provide Forms W–2 for Mr. and Mrs. Kreitenberg separate from their tax returns, and they did not provide adequate personal banking information for Officer Flores to determine their disposable income.

Officer Flores' April 1 letter also offered an installment agreement in which the total liability would be paid off in $21,500 monthly payments for approximately 60 months. It asked petitioner to contact Officer Flores by April 10, 2009, and concluded that if petitioner did not contact the office by that date, the case would be promptly closed.

On April 10, 2009, after Officer Flores had not heard from petitioner, she called petitioner's counsel and left a voicemail message asking whether petitioner wanted to negotiate the installment agreement. On April 23, 2009, petitioner's counsel left Officer Flores a voicemail message stating that he had understood that if petitioner did not respond to Officer Flores' letter, she would close the case and issue a notice of determination. He stated that he would like Officer Flores to close the case and issue the notice of determination because he would like to pursue the issue of collectibility in this Court.

On May 22, 2009, Appeals Team Manager Paula Mills mailed petitioner a Notice of Determination Concerning

Collection Action(s) Under Section 6320 and/or 6330. The letter explained that

It has been determined that we are unable to accept your offer at this time because the tax is held to be legally due and an amount larger than the offer appears to be collectible. Furthermore, you did not remain in full compliance during the time the offer was under consideration. We do not have authority to accept an offer in these circumstances.

Because you are not interested in other alternatives such as an installment agreement, the proposed levy action is appropriate. Based on the case circumstances the proposed levy balances the need for efficient collection of taxes with the legitimate concern that the collection action be no more intrusive than necessary.

Petitioner timely filed a petition with this Court on June 16, 2009, for review of the Appeals Office's actions and the determination. Petitioner stated that "petitioner disagrees with the IRS Notice of Determination on the grounds that the IRS abused its discretion in determining that the taxpayer could full pay the liability in question."

The following table shows the taxes, penalties, additions to tax, and interest assessed as of March 2, 2010.

| Quarter ended | Tax assessed | Late filing penalty | Federal tax deposit penalty | Failure to pay addition | Interest | Payments | Balance |
|---|---|---|---|---|---|---|---|
| Sept. 30, 2005 | $81,920 | $18,432 | $12,243 | $7,782 | $12,700 | $61,682 | $71,396 |
| Mar. 31, 2006 | 109,895 | 24,726 | 16,484 | 7,143 | 11,864 | --- | 170,112 |
| June 30, 2006 | 141,553 | 31,849 | 21,233 | 7,078 | 11,824 | --- | 213,537 |
| Sept. 30, 2006 | 126,316 | 22,737 | 18,947 | 4,421 | 6,986 | --- | 179,408 |
| Dec. 31, 2006 | 106,045 | 2,090 | 5,179 | 979 | 1,697 | 61,459 | 54,531 |
| Total | 565,729 | 99,834 | 74,086 | 27,403 | 45,071 | 123,141 | 688,984 |

On April 28, 2010, respondent filed a motion for summary judgment, and on April 30, 2010, this Court ordered petitioner to file a response to the motion by May 14, 2010. On May 14, 2010, petitioner submitted an expert witness report under Rule 143(g). On May 17, 2010, petitioner filed a response to the motion which had been timely mailed on May 14, 2010. On May 18, 2010, petitioner filed its supplement to opposition to respondent's motion for summary judgment. On June 7, 2010, respondent filed a motion in limine to exclude the testimony and report of Adlai Climan, petitioner's proffered expert. At trial this Court denied both of respondent's motions. The trial was held on June 16, 2010, in Los Angeles, California.

OPINION

I. *Evidentiary Issues*

A. *Administrative Record Rule*

Respondent argues that the administrative record rule, by which the Court's review is limited solely to the administrative record, applies in this case. Petitioner and respondent agree that because the underlying liability is not at issue, the Court's review of the administrative determination regarding the collection action is limited to abuse of discretion. See *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–182 (2000). Respondent essentially argues that the Court may look only at the administrative record that was available to the settlement officer when she made the administrative determination.

This Court held in *Robinette v. Commissioner*, 123 T.C. 85, 101 (2004), revd. 439 F.3d 455 (8th Cir. 2006), that we are not limited to the administrative record in reviewing CDP determinations. However, under the *Golsen* rule, we follow the law of the Court of Appeals for the Ninth Circuit, to which this case, absent a stipulation to the contrary, is appealable. See *Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971). That Court of Appeals has limited the review of the administrative determination to the administrative record. See *Keller v. Commissioner*, 568 F.3d 710, 718 (9th Cir. 2009) ("our review is confined to the record at the time the Commissioner's decision was rendered"), affg. T.C. Memo. 2006–166 and affg. and vacating decisions in related cases. Therefore, the administrative record rule applies.

B. *Adlai Climan's Report and Testimony*

Petitioner has offered a report and the testimony of an expert witness to establish the factual circumstances that it believes should be considered to value its assets. Respondent objects to the admittance of the report and testimony of Adlai Climan (Mr. Climan) on the grounds that it is outside the administrative record and that the report does not qualify as an expert witness report that may be admitted under rule 702 of the Federal Rules of Evidence and Rule 143.

However, as respondent readily acknowledges, there is an exception to the administrative record rule in the Ninth Circuit by which "The extra-record inquiry is limited to determining whether the agency has considered all relevant factors and has explained its decision." *Friends of the Payette v. Horseshoe Bend Hydroelectric Co.*, 988 F.2d 989, 997 (9th Cir. 1993). Mr. Climan's report purports to address the questions that should have been asked in determining the actual value of petitioner's assets. The Court of Appeals for the Ninth Circuit has explained that

A satisfactory explanation of agency action is essential for adequate judicial review, because the focus of judicial review is not on the wisdom of the agency's decision, but on whether the process employed by the agency to reach its decision took into consideration all the relevant factors. [*Asarco, Inc., v. EPA*, 616 F.2d 1153, 1159 (9th Cir. 1980).]

Assuming arguendo that Mr. Climan's report and testimony fit within the exception, respondent further objects to the report and testimony on the basis of rule 702 of the Federal Rules of Evidence and Rule 143.

An expert's opinion is admissible if it will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. We evaluate expert opinions in the light of each expert's demonstrated qualifications and all other evidence in the record. See *Parker v. Commissioner*, 86 T.C. 547, 561 (1986). We are not bound by an expert's opinion and may accept or reject an expert opinion in full or in part in the exercise of sound judgment. See *Helvering v. Natl. Grocery Co.*, 304 U.S. 282, 295 (1938); *Parker v. Commissioner*, *supra* at 561–562.

However, an expert's opinion is not admissible if it contains improper conclusions as to issues of law and not fact. *Snap-Drape, Inc. v. Commissioner*, 105 T.C. 16, 20 (1995), affd. 98 F.3d 194 (5th Cir. 1996). Although Mr. Climan's report concludes with an improper conclusion of law, i.e., that because the settlement officer did not review the factors he believed probative, she must have abused her discretion, a conclusion we shall disregard, the prior sections of the report simply discuss factors that Mr. Climan or another settlement officer would and should have used to make a determination had he been the officer on the case. We do not

find those factors to be an improper conclusion as to an issue of law.

Mr. Climan has a bachelor of arts degree from Queens College and a master's in business administration from California State University at Northridge. He worked for the Internal Revenue Service from 1974 through 2008, first as a revenue officer and then from 1987 through 2008 as a settlement officer. In his report, Mr. Climan states that he was an instructor for numerous training classes for both revenue officers and settlement officers which covered valuation of assets for offers-in-compromise.

In Mr. Climan's opinion, when valuing petitioner's accounts receivable the following questions should have been asked:

Was the A/R figure shown the amount due to be paid at the completion of the contracted-for work, or was it an amount due to be paid to the taxpayer for work already completed?

If it was for to-be-completed work, what were the terms of the payments to be made * * * ?

If these were progress payments, what costs did the taxpayer need to incur to complete each portion of the project in order to receive each successive progress payment?

What has been the historic percentage of similar receivables as received by the taxpayer (e.g. less retention and/or charge-back costs)?

His report also opines on other factors that he believed the settlement officer should have taken into account when evaluating petitioner's offer-in-compromise and ability to make payments. Because the report is helpful to the Court in understanding respondent's administrative procedures and options and assists the Court in comprehending the evidence, we overrule respondent's objection to the admission of Mr. Climan's report and testimony.

## II. *Review for Abuse of Discretion*

Section 6331(a) authorizes the Commissioner to levy upon property or property rights of a taxpayer liable for taxes who fails to pay those taxes within 10 days after a notice and demand for payment is made. Section 6331(d) provides that the levy authorized in section 6331(a) may be made with respect to an unpaid tax liability only if the Commissioner has given written notice to the taxpayer 30 days before the

levy. Section 6330(a) requires the Commissioner to send a written notice to the taxpayer of the amount of the unpaid tax and of the taxpayer's right to a section 6330 hearing at least 30 days before the levy is begun.

If an administrative hearing is requested in a lien or levy case, the hearing is to be conducted by the Appeals Office. Secs. 6320(b)(1), 6330(b)(1). At the hearing, the Appeals officer conducting it must verify that the requirements of any applicable law or administrative procedure have been met. Secs. 6320(c), 6330(c)(1). The taxpayer may raise any relevant issue with regard to the Commissioner's intended collection activities, including spousal defenses, challenges to the appropriateness of the proposed levy, and alternative means of collection. Sec. 6330(c)(2)(A); see also *Sego v. Commissioner*, 114 T.C. at 609; *Goza v. Commissioner*, 114 T.C. at 181–182. Taxpayers are expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing. Secs. 301.6320–1(e)(1), 301.6330–1(e)(1), Proced. & Admin. Regs.

Among the issues that may be raised at Appeals and are reviewed for abuse of discretion are "offers of collection alternatives" such as offers-in-compromise. Sec. 6330(c)(2)(A)(iii). The Court reviews the Appeals officer's rejection of an offer-in-compromise to decide whether the rejection was arbitrary, capricious, or without sound basis in fact or law and therefore an abuse of discretion. *Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006); *Woodral v. Commissioner*, 112 T.C. 19, 23 (1999).

Section 7122(a) authorizes the Commissioner to compromise any civil case arising under the internal revenue laws. In general, the decision to accept or reject an offer, as well as the terms and conditions agreed to, are left to the discretion of the Commissioner. Sec. 301.7122–1(a)(1), (c)(1), Proced. & Admin. Regs.

The grounds for compromise of a tax liability are doubt as to liability, doubt as to collectibility, and promotion of effective tax administration. Sec. 301.7122–1(b), Proced. & Admin. Regs. Petitioners based the offer-in-compromise on doubt as to collectibility, which "exists in any case where the taxpayer's assets and income are less than the full amount

of the liability." Sec. 301.7122–1(b)(2), Proced. & Admin. Regs.

The Commissioner will generally compromise a liability on the basis of doubt as to collectibility only if the liability exceeds the taxpayer's reasonable collection potential; "i.e., that amount, less than the full liability, that the IRS could collect through means such as administrative and judicial collection remedies". *Murphy v. Commissioner*, *supra* at 309–310. The Commissioner has no binding duty to negotiate with a taxpayer before rejecting the taxpayer's offer-in-compromise. *Keller v. Commissioner*, 568 F.3d at 719; *Fargo v. Commissioner*, 447 F.3d 706, 713 (9th Cir. 2006), affg. T.C. Memo. 2004–13.

Petitioner argues that "The Appeals Officer rejected * * * [petitioner's] proposed OIC because it determined that, based on the value of the accounts receivable, whether subject to collection or included as an income stream item, was adequate to full [sic] pay the outstanding tax liabilities." Petitioner essentially believes that the only reason the offer-in-compromise was rejected was that the settlement officer misvalued petitioner's accounts receivable. According to petitioner, the settlement officer should have valued the accounts receivable at only 25 percent of their face value.

When petitioner submitted updated information to Officer Flores on February 23, 2009, it listed a total of $758,457 of accounts receivable.[6] Although petitioner did not include its applications for payment in those accounts receivable, it stated that the $467,000 for the UCLA Life Sciences Replacement Building was billed on January 25, 2009, and was due on March 5, 2009. It also stated that the $291,457 for the LAPD Police Headquarter Facility was billed on January 25, 2009, and was due on March 5, 2009.

Petitioner's prior submissions to Officer Flores included the applications for payment of accounts receivable, and each application showed the original contract amount, an adjustment to that amount for "Change Orders", amount of work completed to date, less an amount withheld for "Retention", before arriving at the billed amount.[7] Therefore according to

---

[6] We note that 25 percent of $758,457 is $189,614.25. By petitioner's own discount, it could not, using its valuation methodology, make the $369,192.27 offer-in-compromise using only accounts receivable's collections.

[7] Petitioner's expert report states that the accounts receivable should be discounted by "reten-

petitioner's own application for payment the amount billed has already been decreased for change orders and retention. Petitioner did not include the applications for payment of its most recent accounts receivable. Consequently, it was not an abuse of discretion for Officer Flores to believe that the amount petitioner stated was the amount billed and that it already accounted for the change orders and retention.

Officer Flores took into account all of petitioner's financial information in making her determination, not just the value of the accounts receivable. We do not find it an abuse of discretion for Officer Flores to have considered petitioner's 2008 net income of $412,218.04 and to have noted "the sizeable increases in Gross Receipts and almost double its payroll, the business has prospered", to conclude that more than the $369,192.27 offer-in-compromise appeared to be collectible.

Finally, it was not an abuse of discretion for Officer Flores to close the case after she had not heard from petitioner regarding her April 1, 2009, letter rejecting petitioner's offer-in-compromise and offering her own installment agreement.

The Court has considered all of petitioner's contentions, arguments, requests, and statements. To the extent not discussed herein, the Court concludes that they are meritless, moot, or irrelevant.

To reflect the foregoing,

*Decision will be entered for respondent.*

---

tion and/or charge-back costs". However, as petitioner's own statements show, under its billing methodology the accounts receivable had already been discounted for those exact factors. The question then for the settlement officer was whether the amount of discount was appropriate or excessive. She found it to be excessive when combined with the 75-percent discount. While this Court on a de novo basis might have valued the collectible portion of the $758,457 somewhat more conservatively than did the settlement officer, we cannot say her valuation was unreasonably outside the pale of actual value, and hence it was not arbitrary, capricious, or without sound basis in fact or law. See *Woodral v. Commissioner*, 112 T.C. 19, 23 (1999). Hence it was not an abuse of discretion. Petitioner had also mentioned in its prior submissions that some of the accounts receivable would include amounts written as joint checks to suppliers; however, petitioner never submitted any documentation that its most current accounts receivable of $758,457 were subject to joint checks.