T.C. Memo. 2019-119

UNITED STATES TAX COURT

MERRICK RAYLE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26253-14L.                              Filed September 12, 2019.

Merrick Scott Rayle, pro se.

Kerrington A. Hall, for respondent.

MEMORANDUM OPINION

LAUBER, Judge:  In this collection due process (CDP) case, petitioner

seeks review pursuant to sections 6320(c) and 6330(d)(1)[1] of a determination by

_____

[1]All statutory references are to the Internal Revenue Code in effect at all
relevant times, and all Rule references (unless otherwise noted) are to the Tax
Court Rules of Practice and Procedure.  We round all monetary amounts to the

(continued...)

**[\*2]** the Internal Revenue Service (IRS or respondent) to uphold collection action. The sole question remaining for decision is whether the settlement officer abused her discretion in concluding that petitioner did not qualify for a streamlined installment agreement. Respondent has moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that his determination to sustain the proposed collection actions was proper as a matter of law. We agree and accordingly will grant the motion.

## Background

The following facts are based on the parties' pleadings and motion papers, including the attached affidavits and exhibits. Petitioner resided in Indiana when he timely filed his petition.

This case involves petitioner's Federal income tax liabilities for 2009 and 2010. The IRS examined his returns for those years and, on January 8, 2013, issued him a notice of deficiency that determined deficiencies and penalties totaling $43,939. On April 16, 2013, he filed a petition with this Court seeking redetermination; because the deficiency for each year was less than $50,000, he filed his case as a small tax case. Rayle v. Commissioner, T.C. Dkt. No. 8466-13S (July

---

[1](...continued)
nearest dollar.

[*3] 18, 2013); see sec. 7463(a)(1). We dismissed that case for lack of jurisdiction because the petition was filed more than 90 days after the IRS issued the notice of deficiency. See sec. 6213(a). Although decisions in small tax cases are not appealable, see sec. 7463(b), petitioner appealed. The U.S. Court of Appeals for the Seventh Circuit dismissed his appeal for lack of jurisdiction on December 8, 2014.

In an effort to collect petitioner's unpaid liabilities for 2009 and 2010, the IRS sent him on March 18 and April 7, 2014, respectively, a notice of Federal tax lien (NFTL) filing and a notice of intent to levy. As of the latter date the IRS had assessed interest on the deficiencies and failure-to-pay additions to tax under section 6651(a)(2). Petitioner's aggregate outstanding tax liability for the two years thus totaled $50,244.

Petitioner timely requested a CDP hearing, and a telephone hearing was held with a settlement officer (SO1) in the IRS Appeals Office in Holtsville, New York. After the hearing SO1 issued a notice of determination sustaining the collection actions. Following petitioner's timely petition we remanded the case to the Appeals Office for a supplemental hearing, which was conducted by SO1.

Petitioner provided no financial information and did not call in for the scheduled hearing. SO1 accordingly issued a supplemental notice of determination sustaining the collection actions. We remanded the case for a second supple-

[*4] mental hearing with instructions that it be conducted by a different settlement officer at a location nearer to petitioner's residence.  We directed that this hearing be held no later than December 29, 2016.

On November 14, 2016, the case was reassigned to a settlement officer (SO2) in the Chicago Appeals Office.  SO2 reviewed the administrative file and confirmed that the tax liabilities in question had been properly assessed and that all other legal and administrative requirements had been satisfied.  That same day she sent petitioner a letter proposing a face-to-face conference on December 1, 2016.  The letter asked that petitioner bring to that conference a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, along with verification of income, expenses, and asset valuation.[2]

---

[2]One reason for the previous remands was to enable the Appeals Office to clarify the import of a letter that petitioner received from the Memphis Service Center on April 2, 2014, while his appeal was pending to the Seventh Circuit from our dismissal in docket No. 8466-13S.  That letter stated that petitioner's account for 2009 was in currently not collectible (CNC) status and that "no further collection action will take place until appeals are finished."  Our decision in docket No. 8466-13S was not appealable and became final 90 days after it was entered.  See secs. 7463(b), 7481(b).  Even if it had been appealable, the Seventh Circuit dismissed petitioner's appeal on December 8, 2014, and its decision became final 90 days thereafter.  See sec. 7481(a)(2)(A); Sup. Ct. R. 13.  SO1 concluded that the April 2, 2014, letter had been issued in error.  While not resolving that question, SO2 explained that CNC status is provisional, that it is subject to reversal at any time, and that the CNC code for petitioner's 2009 year was reversed no later than January 18, 2016.  In opposing respondent's motion for summary judgment, peti-

(continued...)

[*5]   Petitioner and SO2 had scheduling conflicts, and we twice extended the deadline for the hearing, which was held on April 19, 2017.  At the hearing petitioner produced a Form 433-A but no documents to verify his reported financial information.  The Form 433-A indicated that he could pay the IRS $5,857 per month ($13,464 gross income minus $7,607 in living expenses).  SO2 explained that a revenue officer (RO) from the IRS Collection Division would contact him to verify his income and expenses.

At the hearing petitioner attempted to challenge his underlying tax liabilities for 2009 and 2010.  SO2 explained that he could not do this because he had received a notice of deficiency for those years but failed to file a timely Tax Court petition.  See sec. 6330(c)(2)(B).  Although our remand order had made clear that petitioner's underlying liabilities were not at issue, he insisted that he was entitled to dispute them.

SO2 advised petitioner that, if he wished to pursue an installment agreement (IA), he needed to make a proposal with a specific monthly payment.  The parties agreed to a deadline of May 1, 2017, for submission of a proposed IA with supporting bank statements.  Petitioner missed that deadline but on May 8 proposed

---

[2](...continued)
tioner agrees that "the sole remaining issue is whether petitioner qualifies for a streamlined installment agreement."

[*6] an IA offering payments of $500 per month. SO2 noted that petitioner had defaulted on a previous IA for different tax years executed in February 2013.

An RO was assigned to verify the information on petitioner's Form 433-A. The RO sent petitioner a letter requesting copies of tax returns and specified financial information, setting a deadline of August 2, 2017. On August 14 petitioner submitted some but not all of the requested information.

On the basis of the information she had received, the RO disallowed petitioner's claimed monthly vehicle expense of $967--he listed no vehicles as assets-- and adjusted several other expenses for lack of proof. The RO calculated that petitioner had gross monthly income of $13,464 (as shown on his Form 433-A) and total allowable expenses of $5,794, yielding a minimum monthly payment of $7,670.

On August 22, 2017, petitioner informed the RO that he wished to claim additional allowable business expenses. The RO agreed to consider these items if properly verified, but petitioner ignored her deadlines for supplying substantiation. On October 3, 2017, having received no further substantiation, the RO closed her investigation and returned the case to SO2.

On December 4, 2017, SO2 informed petitioner that the RO's calculations were correct on the basis of the expenses he had substantiated. She invited him to

[*7] submit, by December 31, additional information to verify his reported expenses. He responded three weeks late, stating that he disagreed with the RO's calculations, asserting that his monthly disposable income was only $1,043, and proposing an IA with payments of $1,000 per month.

Resolving doubts in petitioner's favor, SO2 concluded that he could pay the IRS at least $2,850 a month. She arrived at this figure by subtracting the total monthly expenses petitioner had reported on his Form 433-A ($7,607) from his average monthly income as reported on his 2016 return ($10,457). On February 2, 2018, she offered petitioner an IA on these terms, inviting him again to supply verification of any additional expenses.

Alternatively, SO2 suggested that petitioner might wish to pursue a stream-lined IA under which he would discharge his aggregate tax liabilities over a six-year period. See Internal Revenue Manual (IRM) pt. 5.14.5.2 (Dec. 23, 2015). For petitioner to qualify for a streamlined IA, his total assessed tax liability could not exceed $50,000. Ibid. As of February 2018, his aggregate assessed liability for the 2009, 2010, and 2015 tax years was $55,433. (The 2015 liability consisted of $224 of interest and additions to tax assessed during the previous six months.) SO2 agreed to consider a streamlined IA if petitioner paid $5,433 to bring his un-paid balance down to $50,000. She asked that he inform her within two weeks

[*8] whether he was interested in pursuing a regular IA at $2,850 per month or a streamlined IA on these terms.

Petitioner did not respond by the February 16 deadline SO2 had set. On March 25 he informed her that he was interested in a streamlined IA but was unwilling to pay $5,433 in order to qualify. He asserted that no upfront payment was required because his 2009-2010 Tax Court case was a "small tax case" that originally involved a tax liability of less than $50,000. According to his calculations (which he did not explain) his required monthly payment under a streamlined IA would be $674.

SO2 concluded that petitioner did not qualify for a streamlined IA because he refused to make an upfront payment of $5,433 to reduce his balance to $50,000.[3] She concluded that he could pay $2,850 per month under a regular IA and so rejected his offer to pay $1,000 per month. And she concluded that he could not challenge his underlying tax liabilities for 2009 and 2010 because he had received a notice of deficiency for those years but failed timely to petition this

_____

[3]On November 14, 2016, December 1, 2017, and January 26, February 2, and September 24, 2018, SO2 reviewed petitioner's account transcripts, which showed on each occasion that his outstanding unpaid assessed balance exceeded $50,000.

**[\*9]** Court. On October 3, 2018, the IRS issued petitioner a 13-page supplemental notice of determination sustaining the proposed levy and the NFTL filing.

On May 8, 2019, respondent filed a motion for summary judgment. Petitioner opposed that motion, contending that SO2 abused her discretion by "failing to consider all issues relevant to his proposed Streamlined Installment Agreement." In a supporting declaration petitioner avers that "[t]he sole remaining issue * * * is whether petitioner qualifies for a Streamlined Installment Agreement."

## Discussion

### A. Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Under Rule 121(b) we may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Ibid. However, the nonmoving party may not rest upon the mere allegations or denials in his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d);

**[*10]** see Sundstrand Corp., 98 T.C. at 520. Petitioner has not identified any material fact in dispute, and we find that this case is appropriate for summary adjudication.

B.     Standard of Review

Neither section 6320(c) nor section 6330(d)(1) prescribes the standard of review that we should apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our precedents. Where the validity or amount of the taxpayer's underlying liability is at issue, we review the Commissioner's determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the taxpayer's underlying liability is not properly before us, we review the IRS action for abuse of discretion. Id. at 182.

Petitioner received a notice of deficiency for 2009 and 2010; he filed an untimely petition for redetermination; we dismissed for lack of jurisdiction; and the Seventh Circuit did the same. Section 6330(c)(2)(B), as well as principles of res judicata, precludes petitioner from challenging his 2009 and 2010 tax liabilities now. See Commissioner v. Sunnen, 333 U.S. 591, 598 (1948); Koprowski v. Commissioner, 138 T.C. 54, 60 (2012); Kanofsky v. Commissioner, T.C. Memo. 2014-153, 108 T.C.M. (CCH) 99, 103, aff'd, 618 F. App'x 48 (3d Cir. 2015). We accordingly review the IRS action for abuse of discretion only. Goza, 114 T.C. at

[*11] 182.  Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law.  See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

C.    Abuse of Discretion

In reviewing an SO's determinations we consider whether he or she: (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues petitioner raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary."  See sec. 6330(c)(3).  Our review of the record establishes that SO2 properly discharged, during the lengthy supplemental hearing process, all of her responsibilities under section 6330(c).

Section 6159 authorizes the Commissioner to enter into an IA if he determines that it will facilitate full or partial collection of a taxpayer's unpaid liability.  See Thompson v. Commissioner, 140 T.C. 173, 179 (2013).  Subject to exceptions not relevant here, the decision to accept or reject an IA lies within the Commissioner's discretion.  See Rebuck v. Commissioner, T.C. Memo. 2016-3; Kuretski v. Commissioner, T.C. Memo. 2012-262, aff'd, 755 F.3d 929 (D.C. Cir. 2014);

[*12] sec. 301.6159-1(a), (c)(1)(i), Proced. & Admin. Regs. We will not substitute our judgment for the SO's, recalculate the taxpayer's ability to pay, or independently determine what would be an acceptable offer. See Thompson, 140 T.C. at 179; Lipson v. Commissioner, T.C. Memo. 2012-252. As a rule, an SO may "accept, at a minimum, a monthly payment equal to the excess of a taxpayer's monthly income over the taxpayer's allowable expenses." Boulware v. Commissioner, T.C. Memo. 2014-80, 107 T.C. (CCH) 1419, 1426, aff'd, 816 F.3d 133 (D.C. Cir. 2016); see Bero v. Commissioner, T.C. Memo. 2017-235; Friedman v. Commissioner, T.C. Memo. 2013-44. An SO is not required to negotiate with a taxpayer indefinitely in an effort to reach an agreement. See Kreit Mech. Assocs., Inc. v. Commissioner, 137 T.C. 123, 134 (2011).

Petitioner initially proposed an IA with payments of $500 per month, and later increased his offer by proposing payments of $1,000 per month. But his own Form 433-A showed that he could pay $5,857 per month. The RO and SO2 repeatedly offered him opportunities to substantiate additional expenses, but he never did so.

After months of delays, missed deadlines, and back-and-forth with petition-er, SO2 resolved many doubts in his favor. She accepted all of the monthly ex-penses reported on his Form 433-A ($7,607), even though the RO had found more

[*13] than $1,800 to be unsubstantiated.  And she reduced his monthly income from $13,464 (as shown on his Form 433-A) to $10,457 (as reported on his 2016 tax return).  Using these figures SO2 determined that petitioner could pay the IRS at least $2,850 per month.  She proposed an IA calling for such payments, but petitioner declined this generous offer.

As an alternative SO2 helpfully suggested that petitioner might wish to consider a streamlined IA, which differs from a regular IA in that it can be processed more quickly and does not depend on verification of income and expenses as reported on Form 433-A.  See IRM pt. 5.14.5.1 (May 23, 2014).  For a taxpayer to qualify for a streamlined IA, his aggregate unpaid assessed liability must be $50,000 or less and he must agree to pay that liability in full in six years.  See id. pt. 5.14.5.2.  The $50,000 cap on assessed liability includes assessed interest, penalties, and additions to tax, but excludes accruals of penalties and interest if they have not yet been assessed.  Ibid.  The required minimum monthly payment is calculated by dividing the total unpaid assessed balance by 72.

On five distinct dates between November 14, 2016, and September 24, 2018, SO2 reviewed petitioner's account transcripts, which showed that his total unpaid assessed balance on each occasion exceeded $50,000.  She accordingly determined that he did not qualify for a streamlined IA.  But she offered him the

[*14] opportunity to qualify by making an upfront payment to reduce his balance to $50,000. As of February 2018, when his assessed balance was $55,433, the upfront payment required would have been $5,433. Petitioner refused this offer, insisting that he did not need to make an upfront payment in order to qualify.

Petitioner is mistaken. He bases his argument on the fact that the notice of deficiency issued to him in January 2013 determined deficiencies and penalties totaling $43,939, so that his case qualified as a "small tax case" under section 7463(a)(1). During the ensuing five years, however, a great deal of interest accrued on those assessed amounts, as well as additions to tax under section 6651(a)(2) for failure to pay. The IRS duly assessed that interest and those additions to tax. Those assessments--which are properly includible in his aggregate assessed balance--brought his total unpaid assessed liability to $55,433 by February 2018. See IRM pt. 5.14.5.2.

The Commissioner has exercised his discretion to entertain IA proposals on a streamlined basis only when the taxpayer's total unpaid assessed balance, as of the date the taxpayer makes the proposal, is $50,000 or less. Ibid. The fact that petitioner's liability was less than $50,000 five years previously is irrelevant under the procedures the Commissioner has prescribed.

[*15] Petitioner does not dispute that his total unpaid assessed balance exceeded $50,000 when SO2 made her determination. And he does not contend that he made any payments that would have reduced his balance below $50,000. SO2 thus correctly determined that petitioner did not qualify for a streamlined IA under the applicable IRM provisions. An SO does not abuse her discretion by adhering to IRM provisions governing acceptance of collection alternatives. See Veneziano v. Commissioner, T.C. Memo. 2011-160, 102 T.C.M. (CCH) 22, 24; Etkin v. Commissioner, T.C. Memo. 2005-245, 90 T.C.M. (CCH) 417, 421; Schulman v. Commissioner, T.C. Memo. 2002-129, 83 T.C.M. (CCH) 1738, 1742 n.6.

SO2 carefully considered every issue petitioner raised during the lengthy CDP proceeding.[4] Although petitioner continually missed deadlines, SO2 gave him every opportunity to supply verification of additional expenses. She offered

---

[4]At various points petitioner asserted that he was making timely payments on an existing IA. After checking his transcripts, SO2 determined that he had, but had defaulted on, a previous IA executed in February 2013. See supra p. 6. Petitioner repeatedly asserted, incorrectly, that he had fully paid his 2015 tax liability. Although he had paid the substantive tax liability for 2015, there remained a balance of $224 attributable to recently assessed interest and additions to tax. See supra p. 7. In any event, even ignoring his 2015 liability, his unpaid liability for 2009 and 2010 comfortably exceeded $50,000. At one point petitioner contended that SO1 had engaged in a prohibited ex parte communication. The communication to which he referred was a conversation between SO1 and her manager at Appeals; because this communication was within the Appeals Office, it was not "ex parte." See Rev. Proc. 2012-18, 2012-10 I.R.B. 455.

[*16] him a regular IA with terms more generous than those his own Form 433-A would have warranted. And she offered him a streamlined IA conditioned on his making an upfront payment of $5,433 to reduce his balance as the IRM required. Petitioner refused all of her offers.

We find that SO2 did not abuse her discretion in determining that petitioner was ineligible for a streamlined IA. In making her determination, she properly balanced the need for efficient collection of taxes with petitioner's legitimate concern that the collection action be no more intrusive than necessary. Finding no abuse of discretion in this or any other respect, we will grant summary judgment for respondent and sustain the proposed levy and NFTL filing.

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered for respondent</u>.