T.C. Memo. 2011-160

UNITED STATES TAX COURT

PAUL R. VENEZIANO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7962-09L.                    Filed July 6, 2011.

Paul R. Veneziano, pro se.

<u>Erika B. Cormier</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, <u>Judge</u>:  This case is before us to review a Notice
of Determination Concerning Collection Action(s) under Section
6320 and/or 6330 (the notice) issued by respondent's Appeals
Office (Appeals).  Unless otherwise indicated, all section
references are to the Internal Revenue Code of 1986, as amended,
and all Rule references are to the Tax Court Rules of Practice

and Procedure. The notice concerns petitioner's 2001, 2002, and 2004 Federal income tax liabilities, and it sustains Settlement Officer Lisa Boudreau's (Ms. Boudreau) determination that a notice of Federal tax lien and a notice of intent to levy for those years should stand.[1] We review the notice pursuant to sections 6320(c) and 6330(d)(1).

Although petitioner's 2002 Federal income tax liability is addressed in the notice, that liability has since been paid in full, and the issues regarding that liability are therefore moot. We concern ourselves with the notice only as it addresses petitioner's 2001 and 2004 liabilities.

At the outset, we note that, at the conclusion of the trial, the Court set a schedule for opening and answering briefs. Respondent complied with that schedule. Petitioner, however, submitted to the Court two letters, the first dated 4 days before the due date for the opening briefs and the second dated 4 days before the due date for the answering briefs. We filed the first letter as petitioner's opening brief and the second as his answering brief. Respondent objects to petitioner's opening

---

[1]The notice is signed by Matthew N. McLaughlin, appeals team manager. The notice itself contains only a "Summary of Determination", but it encloses an attachment that appears to be Ms. Boudreau's memorandum supplying the detail behind the summary determination. Moreover, in her declaration, Ms. Boudreau declares that she made the determination to proceed with collection. We shall, therefore, speak in terms of Ms. Boudreau's determination to proceed with collection.

brief on the ground that it is testimonial and a party may not supplement the record with additional testimony unless the Court has granted a motion to reopen the record. Respondent further objects to petitioner's opening brief on the ground that it does not conform to the requirements of Rule 151(e), governing the form and content of briefs. Among his objections is that petitioner's opening brief does not contain concise statements of essential facts, as required by Rule 151(e)(3).

At the commencement of the trial, we advised petitioner that the trial was his "opportunity to either call any witnesses, testify * * * [himself,] or ask the Court to consider any documents that are not part of the stipulation." Petitioner appeared to understand. Although he had no witnesses to call, he offered two unstipulated documents and testified. While we should accord some leeway to pro se plaintiffs in conforming to technical rules in pleading or in briefing their cases, see, e.g., Haines v. Kerner, 404 U.S. 519, 520 (1972) (pro se's pleading held "to less stringent standards than formal pleadings drafted by lawyers"), respondent would be at a significant disadvantage if we were to consider testimony outside of the record, which he had no opportunity to rebut. We shall therefore

disregard, in reading petitioner's briefs, testimonial statements that we cannot readily source to the record.[2]

Finally, Rule 151(e)(3) also requires that a party, in his answering brief, "set forth any objections, together with the reasons therefor, to any proposed findings of any other party". In his answering brief, petitioner fails to set forth objections to proposed findings of fact contained in respondent's opening brief. Accordingly, we must conclude that petitioner has conceded that respondent's proposed findings of fact are correct except to the extent that those findings are clearly inconsistent with evidence in the record. See, e.g., <u>Jonson v. Commissioner</u>, 118 T.C. 106, 108 n.4 (2002), affd. 353 F.3d 1181 (10th Cir. 2003).

FINDINGS OF FACT

<u>Residence</u>

At the time he filed the petition, petitioner resided in Massachusetts.

---

[2]We note that petitioner has hobbled us in determining what factual statements in his briefs are supported by the record since he has to no degree complied with the requirement of Rule 151(e)(3) to provide references to the pages of the transcript, exhibits, or other sources relied on to support statements in a brief. While the transcript is relatively short, 30 pages, the stipulated exhibits constitute more than 429 pages.

Returns and Assessments

Petitioner did not file his 2001 Federal income tax return until sometime in 2007. He also failed to timely file his 2002 and 2004 returns, and respondent prepared substitutes for returns on account thereof.

Petitioner's 2001 and 2004 Federal income tax liabilities were assessed on October 15 and 22, 2007, respectively.

Notice of Lien and Notice of Intent To Levy

In March 2008, respondent notified petitioner both that he had filed a notice of Federal tax lien and that he intended to levy to collect petitioner's unpaid Federal income taxes of $4,583,[3] $1,446, and $245,657, for 2001, 2002, and 2004, respectively.

Request for Hearing

In response, petitioner timely requested a collection due process hearing. In that request, petitioner proposed two collection alternatives: An installment agreement and an offer in compromise (OIC). He did not challenge the existence or amount of his underlying tax liabilities.

The Hearing

Respondent granted petitioner's request for a hearing, and Ms. Boudreau conducted that hearing (the hearing). In May 2008, she conferred by telephone with petitioner's representative,

_____

[3]We round all dollar amounts to the nearest dollar.

Timothy J. Burke (Mr. Burke).  Neither during that conference nor at any other time during the hearing did Mr. Burke or petitioner challenge the existence or amount of petitioner's underlying 2001, 2002, or 2004 tax liability or propose an installment payment agreement.

In July 2008, petitioner submitted to Ms. Boudreau an OIC, accompanied by a collection information statement, offering to compromise all of his 2001, 2002, 2004, and 2007 (although that year is not at issue here) Federal income tax liabilities for $3,100 on the basis of (1) doubt as to collectibility and (2) effective tax administration.

On the basis of information petitioner submitted, Ms. Boudreau determined that petitioner's reasonable collection potential (sometimes, RCP) was $115,217.  The following schedule summarizes her financial analysis leading to her conclusion that petitioner's RCP was $115,217.

|  | Fair Market Value | Quick Sale Value | Encumbrance Amount | Net Equity |
|---|---|---|---|---|
| Cash on hand | $20 | -- | -- | $20 |
| Fidelity IRA | 23 | -- | $8 | 15 |
| Toyota vehicle | 13,000 | $10,400 | 1,720 | 8,680 |
| Boat | 100 | 80 | -- | 80 |
| Stock | 689 | -- | -- | 689 |
| 2004 IRA distribution (dissipated asset) | 364,985 | -- | 359,191 | 5,794 |
| Real property | 270,300 | 216,240 | 116,301 | 99,939 |
| Reasonable collection potential |  |  |  | 115,217 |

Ms. Boudreau did not include any future earnings potential in calculating petitioner's RCP.

With respect to the real property listed on the schedule: In April 2004, petitioner purchased Lot 112, Tower Hill, Plymouth, Massachusetts, unimproved real estate (the property) for $285,000. He used funds from the 2004 IRA distribution to make the purchase. In June 2004, petitioner encumbered the property with a mortgage of $100,000. In December 2007, petitioner created the Veneziano Children Irrevocable Trust (the trust), Mara Veneziano (petitioner's sister) trustee, and conveyed the property to the trust. Pursuant to the indenture creating the trust, petitioner retained "the right to use and occupy any real estate owned by the trust, rent free, for life." Petitioner continues to make mortgage payments of $955 a month.

During Ms. Boudreau's consideration of petitioner's case, Mr. Burke stated to her that petitioner had conveyed the property to the trust pursuant to a court order, citing a separation agreement, dated August 6, 2003 (the separation agreement), between petitioner and his ex-wife. In relevant part, the separation agreement includes the following handwritten provision: "Husband and wife shall execute irrevocable trusts naming the other as trustee for the children until each child reaches 30 years old[.] The corpus shall be used for each childs [sic] health, maintenance, support[,] education for [sic] equally for each child[.]" The separation agreement does not require that petitioner transfer the property to the trust. Petitioner

entered into the separation agreement more than 8 months before he acquired the property and more than 4 years before he created the trust. Ms. Boudreau determined that, despite the trust's title to the property, respondent could collect petitioner's unpaid tax from the proceeds of a sale of the property by asserting a transferee liability or false conveyance theory.

Taking into account the 2009 assessed value of the property, the outstanding balance of the mortgage encumbering the property, and a Massachusetts State tax lien encumbering the property, Ms. Boudreau determined the net equity value of the property to be $99,939.

The Notice

Ms. Boudreau rejected petitioner's OIC, determining that his RCP of $115,217 was significantly more than the $3,100 he had offered and, therefore, he did not qualify for an OIC based on doubt as to collectibility. She further determined that, because he had not provided an explanation of special circumstances that would justify acceptance of a less-than-RCP OIC, he did not qualify for an OIC based on the grounds of either (1) effective tax administration or (2) doubt as to collectibility with special circumstances. Finally, she determined that the lien would not be released. Ms. Boudreau's memorandum accompanying the notice states:

> You have not proposed a viable alternative to the lien notice * * * . You own land with significant equity

and have not taken steps to either borrow against it or liquidate it. There is equity in the property that would allow you to pay a significant portion of the outstanding liability. This analysis indicates that the Notice of Federal Tax Lien and the proposed collection action are necessary to provide for the efficient collection of the taxes despite the potential intrusiveness of enforced collection.

## The Petition

Petitioner assigned error to the notice, addressing only Appeals' determination with respect to the notice of Federal tax lien but, we assume, also intending to address respondent's intent to levy. He claimed that Appeals had erred because he was still under "financial, emotional, psychological and physical hardship"; Ms. Boudreau did not consider, "misrepresented, or overlooked" information and facts, which led to an unfair, unjust, and inappropriately informed decision; and "[t]he only asset of any value I am associated with is a parcel of undeveloped land that is in an irrevocable trust for my children."

### OPINION

## I. Introduction

Because petitioner did not raise a challenge to his underlying 2001 and 2004 tax liabilities in his request for a collection due process hearing or during the hearing, he may not dispute those liabilities in this proceeding. See Giamelli v. Commissioner, 129 T.C. 107, 115 (2007). In that request, petitioner proposed only an installment agreement and an OIC.

We review Appeals' determination concerning those two proposals for abuse of discretion.  See Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  An Appeals officer abuses her discretion when she "takes action that is arbitrary or capricious, lacks sound basis in law, or is not justifiable in light of the facts and circumstances."  Willis v. Commissioner, T.C. Memo. 2003-302 (citing Mailman v. Commissioner, 91 T.C. 1079, 1084 (1988)).

## II.  Installment Agreement

Ms. Boudreau did not abuse her discretion in failing to consider an installment agreement since petitioner did not propose any terms for an installment agreement during the hearing.  See Swanton v. Commissioner, T.C. Memo. 2010-140 (citing Kendricks v. Commissioner, 124 T.C. 69, 79 (2005)).

## III.  OIC Based on Doubt as to Collectibility

Nor did she abuse her discretion in rejecting petitioner's OIC of $3,100.  Generally, an Appeals officer does not abuse her discretion in determining to reject an OIC following guidelines in the Internal Revenue Manual (IRM).  E.g., Atchison v. Commissioner, T.C. Memo. 2009-8.  The Commissioner may accept an OIC based on doubt as to collectibility if the offer reflects the taxpayer's reasonable collection potential.  IRM pt. 5.8.4.4(2) (Sept. 23, 2008).  Ms. Boudreau determined petitioner's reasonable collection potential to be $115,217, and petitioner

has failed to show that she erred in doing so. His only discernible challenge to her determination appears to be to her inclusion of the property in his RCP. He does not challenge her determination of the property's net equity value of $99,939 but only her assumption that the property was still his; i.e., that it was available to satisfy his unpaid taxes.

A Federal tax lien arises when unpaid taxes are assessed and continues until the resulting liability is either satisfied or becomes unenforceable because of the running of the period of limitations. Secs. 6321 and 6322; sec. 301.6321-1, Proced. & Admin. Regs. The lien attaches to all property and rights to property the taxpayer then holds or subsequently acquires. Sec. 6321; sec. 301.6321-1, Proced. & Admin. Regs. Where assets subject to the Federal tax lien are transferred to another party, the lien remains on those assets. United States v. Bess, 357 U.S. 51, 57 (1958) ("The transfer of property subsequent to the attachment of the lien does not affect the lien, for 'it is the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere'"). Petitioner's 2001 and 2004 Federal income tax liabilities were assessed on October 15 and 22, 2007, respectively. Petitioner conveyed the property to the trust on December 3, 2007. Therefore, the Federal tax lien had already attached to the property before its

conveyance to the trust.[4]  Ms. Boudreau did not err in determining that, by asserting a transferee liability or false conveyance theory, the Commissioner could collect petitioner's unpaid tax from the proceeds of a sale of the property.

IV.  Effective Tax Administration and Doubt as to Collectibility With Special Circumstances

The Commissioner may accept an OIC based on effective tax administration if the taxpayer's RCP is greater than the amount owed but the Commissioner determines that a lesser amount should be accepted on the grounds of economic hardship, public policy, or equity.  IRM pt. 5.8.11.1 (Sept. 23, 2008).  The effective-tax-administration grounds of economic hardship, public policy, or equity may also be applied to a taxpayer whose RCP is less than the amount of tax owed.  In that case, the Commissioner may accept an offer that is less than the taxpayer's RCP as an OIC based on doubt as to collectibility with special circumstances. Id. pt. 5.8.11.2(2)(B).

For purposes of making the relevant determinations, economic hardship is defined as the inability to pay reasonable, basic living expenses.  Id. pt. 5.8.11.2.1(2).  "Basic living expenses are those expenses that provide for health, welfare, and production of income of the taxpayer and the taxpayer's family." Id. pt. 5.8.11.2.1(4).  The public policy or equity grounds are

_____

[4]Moreover, for reasons discussed infra, the trust did not constitute the trust mentioned by the separation agreement.

satisfied where, "due to exceptional circumstances, collection in full would undermine public confidence that the tax laws are being administered in a fair and equitable manner."  Id. pt. 5.8.11.2.2(2).  Compromise on those grounds is very rare.  Id. Except where the ground is hardship, the offer should also meet the following requirements:

> • The taxpayer has remained in compliance since incurring the liability and overall their compliance history does not weigh against compromise;

> • The taxpayer must have acted reasonably and responsibly in the situation giving rise to the liabilities; and

> • The circumstances of the case must be such that other taxpayers would view the compromise as a fair and equitable result.  For example, it should not appear to other taxpayers that the result of the compromise places the taxpayer in a better position than they would occupy had they timely and fully met their obligations.

Id. pt. 5.8.11.2.2(4).

Ms. Boudreau did not err in following IRM guidelines and determining that petitioner did not, on the grounds of economic hardship, public policy, or equity, qualify for an OIC based on either effective tax administration or doubt as to collectibility with special circumstances.  With respect to economic hardship, there is no evidence that petitioner submitted to Ms. Boudreau that shows he could not pay his own living expenses.  Indeed, he continues to make the $955 monthly payments on the mortgage encumbering the property.

Additionally, petitioner did not act reasonably and responsibly in the situation giving rise to his income tax liabilities. Petitioner was delinquent in filing his returns for the taxable years 2001, 2002, and 2004. Petitioner received an IRA distribution of $364,985 in 2004 and, rather than pay or provide for his income tax liabilities, he used a significant portion to purchase the property. Under those circumstances, we agree with respondent that less than full collection of petitioner's liabilities would undermine public confidence that the tax laws are being administered in a fair and equitable manner.

Ms. Boudreau did not abuse her discretion in denying petitioner an OIC on the grounds of either effective tax administration or doubt as to collectibility with special circumstances.

V.  The Trust Is Not a Judgment Lien Creditor

Petitioner appears to argue that the Federal tax lien at issue here is not valid against the property because the trustee (who now owns the property) is a judgment lien creditor who obtained her interest before the notice of Federal tax lien was properly filed. See sec. 6323(a). "The term 'judgment lien creditor' means a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery

of specifically designated property or for a certain sum of money."  Sec. 301.6323(h)-1(g), Proced. & Admin. Regs.

In support of his argument that the trustee is a judgment lien creditor, petitioner points to the separation agreement's handwritten provision:  "Husband and wife shall execute irrevocable trusts naming the other as trustee for the children until each child reaches 30 years old[.]  The corpus shall be used for each childs [sic] health, maintenance, support[,] education for [sic] equally for each child[.]"

The separation agreement, however, does not require that petitioner transfer the property to the trust.  In fact, the separation agreement is dated August 6, 2003, more than 8 months before petitioner acquired the property and more than 4 years before petitioner created the trust.  Further, the separation agreement describes a trust for which petitioner's ex-wife is the trustee, but the trustee of the trust is Mara Veneziano, petitioner's sister.  The trust simply does not meet the description of the trust found in the separation agreement.

The property was not conveyed to the trustee in connection with any judgment of a court of record and competent jurisdiction.  Further, the separation agreement does not specifically designate the property or any certain sum of money and creates no judgment lien.  Accordingly, the trustee is not a

judgment lien creditor for purposes of invalidating the Federal tax lien.

## VI. Ms. Boudreau Complied With All Other Requirements of Section 6330

Pursuant to section 6330(c)(3), Appeals's determination must take into consideration:  (1) The verification that the requirements of applicable law and administrative procedure have been met, (2) issues raised by the taxpayer, and (3) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection be no more intrusive than necessary.  As stated in Ms. Boudreau's memorandum attached to the notice, she considered all three of those matters.

## VII.  Conclusion

Ms. Boudreau complied with the requirements of section 6330(c)(3) and did not abuse her discretion in determining that respondent could proceed with collection.  Her determination to proceed with collection is sustained.  The notice of Federal tax lien is sustained, and respondent may proceed by levy to collect petitioner's unpaid 2001 and 2004 Federal income tax liabilities.

An appropriate order and decision will be entered for respondent.