T.C. Memo. 2017-119

UNITED STATES TAX COURT

W. ZINTL CONSTRUCTION, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21741-14L.                    Filed June 19, 2017.

<u>Thomas M. Regan</u>, for petitioner.

<u>Christina L. Cook</u>, for respondent.

MEMORANDUM OPINION

PUGH, <u>Judge</u>:  Petitioner petitioned the Court for review of respondent's

Notice of Determination Concerning Collection Action(s) Under 6320 and/or

6330[1] sustaining notices of intent to levy (levy notices) and a notice of Federal tax

_____

[1] Unless otherwise indicated all section references are the Internal Revenue
Code of 1986, as amended and in effect at all relevant times.  Rule references are
(continued...)

**[*2]** lien filing with respect petitioner's outstanding employment tax liabilities from Forms 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, for 2010 and 2011, and Forms 941, Employer's Quarterly Federal Tax Return, for the quarterly periods ending December 31, 2010; March 31, June 30, September 30, and December 31, 2011; and March 31 and June 30, 2012 (underlying liabilities). The underlying liabilities totaled $6,563,263 as of September 4, 2014.[2]

This case is before the Court on cross-motions for summary judgment pursuant to Rule 121(a). We are asked specifically whether respondent abused his discretion by valuing petitioner as a going concern and on that basis rejecting petitioner's offer in compromise (OIC) as substantially below petitioner's reasonable collection potential (RCP).

## Background

The following facts are based on the parties' pleadings and the parties' summary judgment motions, including the attached affidavits and exhibits. Petitioner, a C corporation wholly owned by William and Ann Zintl, is a commercial construction subcontractor with a principal place of business in

---

[1](...continued)
to the Tax Court Rules of Practice and Procedure.

[2] All monetary amounts are rounded to the nearest dollar.

[*3] Minnesota. On May 28, 2013, respondent sent a notice of intent to levy to petitioner with respect to its employment tax liabilities from: (1) Forms 941 for the quarterly periods ending June 30, September 30, and December 31, 2011; and March 31 and June 30, 2012; and (2) Forms 940 for 2010 and 2011. In response on June 3, 2013, petitioner submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing. On June 4, 2013, respondent sent a notice of intent to levy to petitioner with respect to its Form 941 unpaid tax liability for the period ended on December 31, 2010. In response on June 13, 2013, petitioner submitted Form 12153. On June 18, 2013, respondent sent a notice of intent to levy to petitioner with respect to its Form 941 unpaid tax liability for the period ended on March 31, 2011. In response on July 16, 2013, petitioner submitted Form 12153. On all Forms 12153 petitioner checked "offer in compromise" as a collection alternative and wrote "We believe that it is premature to take collection action in this matter. An Offer in Compromise is an appropriate collection alternative."

On a Form 656, Offer in Compromise, submitted on August 27, 2013, petitioner made an OIC of $1 million. In support thereof petitioner provided a profit and loss statement and a balance sheet ending June 30, 2013, and a Summary Appraisal Report by Hoff Appraisal Associates dated February 12,

**[*4]** 2013, indicating a "Forced Liquidation Value" for petitioner's machinery and equipment of $1,155,000. In an accompanying letter to Settlement Officer (SO) Albright, petitioner indicated an accounts receivable balance of $3,359,920 as of August 9, 2013. After quoting the Internal Revenue Manual (IRM) regarding the proper treatment of accounts receivable, the letter explained that "Zintl is profitable and its receivables are part of the income stream required for the production of income. The company must pay for materials and labor to continue operating. Without the income flow from these receivables the business could not operate." Petitioner also explained that "[t]he liquidation of Zintl's inventory, machinery, and equipment would end its ability to operate. Zintl recently sold all of the assets it could spare to satisfy an obligation to Citizens State Bank that was secured by its inventory and equipment."

SO Albright requested additional documentation, including a valuation of the business as a going concern and a copy of the equipment appraisal listing the fair market value of petitioner's physical assets. Petitioner sent the documents requested, including a going-concern appraisal prepared by Shenehon Co. dated April 16, 2014. The going-concern appraisal estimated a going-concern fair market value of $2,100,000, using three valuation methods, each of which subtracted accrued payroll tax liability and interest of $4,190,290. The largest

[*5] single asset reflected in the appraisal was the accounts receivable (in excess

of $7 million at the end of petitioner's fiscal year ending January 2014[3]), and the

largest single liability was the payroll tax liability. The appraisal did not include

the accumulated penalties on the tax liability (estimated to be $2,101,723). The

appraisal assigned no value to goodwill. The appraisal also estimated a

liquidation value for the company of negative $3,720,000.

> In a letter dated April 24, 2014, SO Albright responded:

> [The] appraisal estimated the value of the business to be $2,100,000
> after allowing for the IRS debt of $4,190,980. In other words the
> value of the business for purposes of the OIC is estimated to be
> $6,290,980. In determining the reasonable collection potential in an
> OIC, the IRS would generally reduce the asset values by 20%. As a
> result, in this case the reasonable collection potential is computed to
> be $5,032,784 ($6,290,890 x .8).

> SO Albright gave petitioner an opportunity to submit an amended OIC "in

an amount at least equal to the reasonable collection potential" and stated that he

likely would reject the original $1 million offer if an amended offer were not

received by May 8, 2014. By letter dated May 1, 2014, petitioner disagreed with

---

[3] The receivables figure included over $4.8 million in receivables for
projects that were not yet completed. The appraisal assumed that collecting these
receivables, for projects not yet completed, would be doubtful and therefore
reduced the accounts receivable by this amount when calculating the liquidation
value of petitioner.

**[*6]** the "use of the going concern valuation of Zintl to calculate an acceptable Offer in Compromise amount".

On June 17, 2014, SO Albright issued petitioner a letter stating that he had "been unable to find anything to indicate that the going-concern value cannot be used in determining the RCP when the taxpayer is a business (as opposed to when the taxpayer is the shareholder of a business)". The letter advised petitioner that any OIC had to cover all of the tax owed and at least some of the penalties and interest and explained the basis for this conclusion (relating to the growth of the business over the period the business was delinquent on its tax obligations and the enhanced going-concern value due to this growth). SO Albright calculated the unpaid taxes to be approximately $3,666,000 and the total liability, with penalties and interest, to be $6,423,000. Finally he advised petitioner that if it wanted to amend the OIC to reflect the computed RCP of $5,032,784 it should submit an amended Form 656 by July 1, 2014.

In a July 9, 2014, meeting and subsequent calls petitioner advised SO Albright that it was unable to secure financing to fund a $5 million OIC but was continuing to work with banks on financing. On August 4, 2014, petitioner's attorney notified SO Albright that petitioner anticipated receiving a loan of $3 million that if approved would allow petitioner to increase its OIC to $3,200,000.

**[*7]** In the Case Activity Record SO Albright noted, among other concerns, that the deadline for increasing the OIC had lapsed and the loan had not yet been approved. SO Albright indicated that he had a number of other reasons for rejecting petitioner's OIC on public policy grounds but would recommend rejection based on RCP rather than public policy.

On August 11, 2014, respondent issued a notice of determination rejecting petitioner's offer of $1 million because its RCP exceeded that amount and sustaining the disputed collection actions.

## Discussion

### I. Summary Judgment

Rule 121(b) provides in part that after a motion for summary judgment and an opposing response are filed, "[a] decision shall * * * be rendered if the pleadings * * * and any other acceptable materials, together with the affidavits or declarations, if any, show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law." Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The parties agree that there are no disputed material facts and therefore summary judgment is appropriate.

**[\*8]** II. <u>Analysis</u>

Where (as here) there is no dispute as to the taxpayer's underlying liabilities, we review the Appeals Office's determination for abuse of discretion. <u>Goza v. Commissioner</u>, 114 T.C. 176, 182 (2000); <u>see also</u> <u>Sego v. Commissioner</u>, 114 T.C. 604, 609-610 (2000). An abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. <u>See</u> <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006). We do not substitute our judgment for that of the settlement officer as to the acceptability of a particular offer. <u>See, e.g.</u>, <u>Johnson v. Commissioner</u>, 136 T.C. 475, 488 (2011), <u>aff'd</u>, 502 F. App'x 1 (D.C. Cir. 2013). If the settlement officer follows all statutory and administrative guidelines and provides a reasoned, balanced decision, the Court will not reweigh the equities. <u>See</u> <u>Fifty Below Sales & Mktg., Inc. v. United States</u>, 497 F.3d 828, 830 (8th Cir. 2007). Generally, the settlement officer does not abuse his or her discretion by rejecting an offer in compromise in accordance with the guidelines set forth in the IRM. <u>See</u> <u>Veneziano v. Commissioner</u>, T.C. Memo. 2011-160 (finding that settlement officer did not err in following IRM guidelines and determining that taxpayer did not qualify for OIC based on effective tax administration or doubt as to collectibility with special circumstances); <u>Schulman v. Commissioner</u>, T.C.

**[*9]** Memo. 2002-129 (upholding a settlement officer's proposed monthly installment payment computed under IRM guidelines).

Section 7122(a) authorizes the IRS to compromise an outstanding tax liability, based on doubt as to collectibility. Sec. 301.7122-l(b), Proced. & Admin. Regs. Doubt as to collectibility exists in any case where the taxpayer's assets and income are less than the full amount of the liability. Id. subpara (2). Generally, an OIC will be accepted if it is unlikely that the tax can be collected in full and the OIC reasonably reflects the amount the IRS could collect through administrative and judicial collection remedies. See Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517. Absent a showing of special circumstances, settlement officers are directed to reject offers substantially below the taxpayer's RCP when the OIC is premised on doubt as to collectibility. Id. The main components of a taxpayer's RCP are realizable net equity in the taxpayer's assets and the taxpayer's net future income. See Johnson v. Commissioner, 136 T.C. at 485; IRM pt. 5.8.11.2 (Aug. 5, 2015).

The only issue in dispute is whether SO Albright abused his discretion by using the going-concern value as described in IRM pt. 5.8.5.17 (Sept. 30, 2013) to calculate petitioner's RCP as that was the only reason given in the notice of determination for rejecting petitioner's OIC. We therefore must decide whether

**[\*10]** SO Albright's calculation of RCP was reasonable.  See <u>Johnson v. Commissioner</u>, 136 T.C. at 486.

IRM pt. 5.8.5.17 states, as relevant:

1. Evaluation of a business as a going concern is sometimes necessary when determining RCP of an operating business owned individually or by a corporation, partnership, or LLC. This analysis recognizes that a business may be worth more than the sum of its parts, when sold as a going concern.

 2. To determine the value of a business as a going concern consider the value of assets, future income, and intangible assets such as:

- Ability or reputation of a professional.
- Established customer base.
- Prominent location.
- Well known trade names, trade marks, or telephone number.
- Possession of government licenses, copyrights, or patents.

Generally, the difference between what an ongoing business would realize if sold on the open market as a going concern and the traditional RCP analysis is attributable to the value of these intangibles.

      \*        \*        \*        \*        \*        \*

5.  Generally, the value of a business as a going concern would not be included in RCP of a viable, ongoing business, unless the value is substantially greater than the income produced by the business.

Petitioner contends that the going-concern valuation method in IRM pt. 5.8.5.17 applies only when the taxpayer is the owner of a business; it cannot apply when the taxpayer is the business.  This is because the IRS "can never collect the

**[*11]** going-concern value by levying and seizing all the assets from the taxpayer", according to petitioner.  Petitioner further argues that if the IRM provision allows respondent to use the going-concern valuation method to determine petitioner's RCP then the IRM provision itself "is an abuse of discretion by the IRS".   Respondent contends that there is "nothing prohibiting the IRS from selling the business off as a going concern after seizing it".

In effect petitioner asks us to decide that use of the going-concern value of a business is never appropriate when the business being valued is the taxpayer.  We cannot so conclude, nor need we, because we find that SO Albright's calculation of RCP was faulty for a different reason:  In calculating petitioner's RCP, SO Albright increased petitioner's going-concern value by the amount of the unpaid tax liability that the appraisal took into account in its calculation of value and based his determination of RCP solely on this modified value.

This modification to the value at first blush seems logical.  Reducing petitioner's going-concern value by its tax liability when determining how much of this tax liability petitioner can pay would seem to double count the tax liability and provide a boon to a business taxpayer whose tax debt is part of the business being valued.  It is this tax liability that will be satisfied with the OIC, after all.  The problem is that the going-concern value is intended to give some indication of

[*12] the value of petitioner as a continuing business, that is, what a third party might pay to buy petitioner as a whole, including all of its assets and liabilities. No third party would buy petitioner without taking into account the unpaid tax liability. And the record shows that petitioner could not obtain financing for the modified amount either. This highlights the logical difficulty of using going-concern value--which presumes that a taxpayer can sell itself--to determine RCP. Nonetheless, we cannot conclude that consideration of the going-concern value and the information in the appraisal is irrelevant or that the settlement officer may not consider this information, including the specific assets and liabilities, including the tax liability, on remand. We also do not hold that petitioner's offer was reasonable. We hold only that SO Albright's rejection of petitioner's OIC solely on the basis of his calculation of RCP that used petitioner's going-concern valuation but disregarded completely its tax liability was not reasonable on this record.

## Conclusion

We hold that SO Albright's calculation of petitioner's RCP was not reasonable on the record before us. Accordingly, we will remand this case to the Office of Appeals for the purpose of having it determine petitioner's RCP.

**[*13]** To reflect the foregoing,

<u>An appropriate order will be</u>

<u>issued</u>.