T.C. Memo. 2019-68

UNITED STATES TAX COURT

INDUS GROUP, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15969-17L.                    Filed June 10, 2019.

<u>Gerald W. Kelly, Jr.</u>, <u>Daniel S. Heller</u>, and <u>Vadim D. Ronzhes</u>, for petitioner.

<u>Rachel L. Gregory</u> and <u>Bartholomew Cirenza</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case, petitioner seeks review of the determination by the Internal Revenue Service (IRS or respondent) to uphold a notice of intent to levy.  Respondent has moved for summary judgment, contending that there are no genuine disputes of material fact and

[*2] that his determination to sustain the proposed collection action was proper as a matter of law. The question presented is whether the IRS settlement officer (SO) abused his discretion in declining petitioner's proposal to discharge its $4,757,745 Federal tax liability by making installment payments of $5,500 per month.[1] Finding no abuse of discretion, we will grant respondent's motion.

## Background

The following facts are based on the parties' pleadings and motion papers, including the attached declarations and exhibits. Petitioner had its principal place of business in Virginia when it timely petitioned this Court.

Petitioner is a corporation that operates in the information technology consulting industry. Petitioner's sole shareholder is Ravi Ramanulla. In July 2015 Mr. Ramanulla pleaded guilty to Federal tax crimes. He was ordered to pay restitution in excess of $900,000, and he served four months in Federal custody. He has a related CDP case pending in this Court. Ramanulla v. Commissioner, T.C. Dkt. No. 18243-17L (filed Sept. 1, 2017).

Petitioner employed numerous workers and was required to file employment tax returns and deposit taxes with respect to their wages. Petitioner failed to file

---

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*3] Forms 941, Employer's Quarterly Federal Tax Return, and Forms 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, for various tax periods. For most of the periods in question, petitioner also failed to deposit the employment taxes that were required to be shown on these returns. See sec. 6656.

The IRS timely assessed petitioner's Form 941 liabilities for 25 calendar quarters between March 31, 2008, and December 31, 2015, as well as petitioner's Form 940 liabilities for 2008 through 2013. Some of these assessments were based on substitutes for returns prepared by the IRS. See sec. 6020(b). Some assessments were based on returns petitioner had filed. The balances due include penalties under section 6656, failure-to-file additions to tax, and failure-to-pay additions to tax. The IRS also assessed a civil penalty under section 6721 for failure to file correct information returns for 2013. As of May 2016 petitioner's assessed but unpaid tax liabilities totaled $4,757,745.

On May 17, 2016, in an effort to collect these unpaid liabilities, the IRS mailed petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing. Petitioner timely requested a CDP hearing. In its request petitioner checked the boxes "Installment Agreement," "Offer in Compromise," and "I Cannot Pay Balance." Petitioner stated that it desired a collection alternative

[*4] and that the levy "would create an undue economic hardship."  Petitioner also sought "an abatement of penalties based on reasonable cause."

After receiving petitioner's case an SO from the IRS Appeals Office confirmed that the tax liabilities and penalties had been properly assessed and that all other requirements of applicable law and administrative procedure had been met. On March 27, 2017, the SO mailed petitioner a letter acknowledging receipt of its hearing request and scheduling a telephone CDP hearing for May 1, 2017.

The SO informed petitioner that, in order for her to consider a collection alternative, petitioner needed to provide a completed Form 433-B, Collection Information Statement for Businesses, supporting financial information, and a specific proposal for a collection alternative.  The SO's review of petitioner's account revealed that it had not filed Form 940 for 2016 and had not filed Form 941 for the first quarter of 2016.  The SO asked that petitioner submit proof that it had filed these delinquent returns.  The SO also explained that, if petitioner sought penalty abatement, it must "provide a written statement with specific information * * * and grounds for reasonable cause abatement."  The SO requested that petitioner supply all of this information three weeks before the hearing, i.e., by April 10, 2017.

The SO did not receive any of the requested information before the hearing. On May 1, 2017, the day scheduled for the hearing, the SO received a fax from

**[\*5]** petitioner's representative that included a proposed installment agreement offering to pay $5,000 per month, a signed Form 433-B, and copies of the delinquent Forms 940 and 941. Upon review of petitioner's financial information the SO observed certain discrepancies. For example, although petitioner claimed average monthly expenses of $322,082, it supplied no explanation concerning $82,719 of these claimed expenses, which the SO regarded as "questionable."

At the CDP hearing petitioner did not challenge its underlying liability for the employment tax liabilities, and it presented no evidence relevant to abatement of the penalties. Rather, petitioner requested a collection alternative in the form of an installment agreement. Relying on the financial information accompanying its Form 433-B, which showed monthly net income of $5,624, petitioner proposed an installment agreement of $5,000 per month.

During the hearing petitioner's representative attempted to answer the SO's questions concerning petitioner's reported income and expenses. The SO was not satisfied with these responses, and she noted that "there are questions about real property ownership" that had not been answered. The SO agreed that a revenue officer would analyze the financial information and be prepared to discuss his conclusions during a multiparty conference call that the SO scheduled with petitioner's representative for 2 p.m. on June 12, 2017. This conference call was in

**[\*6]** tended to address questions concerning petitioner's case and also concerning Mr. Ramanulla's related CDP case.

Petitioner's representative did not call in for the 2 p.m. conference call. He left the SO a voice message at 3:51 p.m. stating that he had "got caught up on another issue." Two days later petitioner's representative submitted another package of information that included the offer of an increased installment agreement whereby petitioner would pay $5,500 per month.

Reviewing the information in petitioner's file, the SO determined that the proposed installment agreement should be rejected given the magnitude of the tax liabilities, petitioner's "chronic history of noncompliance," and the lack of credibility surrounding its offer. In making this determination the SO relied in part on Internal Revenue Manual (IRM) pt. 5.14.7.2(1)(c) (Aug. 5, 2010) advising that "[t]axpayers identified as repeaters may not immediately be granted installment agreements." On June 27, 2017, the IRS issued a notice of determination sustaining the proposed levy, summarizing the SO's reasoning thus:

> The taxpayer proposed an installment agreement for $5,500 per month but was denied due to being a repeater and having a chronic history of non-compliance with filing returns and meeting federal deposit requirements. In addition, the representative failed to participate in a second conference which was arranged as a 3-way conference in an effort to facilitate resolution of the account, and provided information sporadically and outside of the timeframes estab-

**[\*7]** lished to allow for adequate review of the taxpayer's financial situation. Thus, the installment agreement proposal also lacked credibility.

## Discussion

### A. Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Under Rule 121(b), we may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Ibid. However, the nonmoving party may not rest upon the mere allegations or denials in his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); see Sundstrand Corp., 98 T.C. at 520. We conclude that there are no material facts in dispute and that this case is appropriate for summary adjudication.[2]

---

[2]Petitioner asserts in its response to the motion for summary judgment that there are genuine disputes of material fact. Petitioner does not identify what the disputed material facts are.

**[\*8]** B.      <u>Standard of Review</u>

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. But our case law tells us what standard to adopt. Where the validity of the taxpayer's underlying tax liability is properly at issue, we review the IRS' determination de novo. <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). Where (as here) the taxpayer's underlying liability is not before us, we review the IRS' determination for abuse of discretion only.[3] <u>See</u> <u>id.</u> at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. <u>See</u> <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006).

C.    <u>Analysis</u>

In deciding whether the SO abused her discretion in sustaining the proposed levy, we consider whether she: (1) properly verified that the requirements of any applicable law or administrative procedure have been met, (2) considered any rel-

---

[3]Although petitioner in its hearing request mentioned penalty abatement, it did not address this issue during the CDP hearing or in its petition, and it submitted no evidence concerning reasonable cause despite the SO's request that it do so. Petitioner is thus precluded from disputing its liability for the penalties in this Court. <u>See</u> <u>Thompson v. Commissioner</u>, 140 T.C. 173, 178 (2013) ("A taxpayer is precluded from disputing the underlying liability if it was not properly raised in the CDP hearing."); sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

**[\*9]** evant issues petitioner raised, and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." <u>See</u> sec. 6330(c)(3). Our review of the record establishes that the SO properly discharged all of her responsibilities under section 6330(c).

Petitioner contends that the SO did not properly consider its request for a collection alternative in the form of an installment agreement.[4] Section 6159(a) authorizes the IRS to enter into a written agreement allowing a taxpayer to pay a tax liability in installments "if the Secretary determines that such agreement will facilitate full or partial collection of such liability." Subject to an exception not relevant here, the decision to accept or reject an installment agreement lies within

---

[4]In its hearing request petitioner also indicated a desire for a offer-in-compromise (OIC). But it did not submit a completed Form 656, Offer in Compromise, or otherwise pursue an OIC with the SO. "There is no abuse of discretion when Appeals fails to consider an offer-in-compromise when a Form 656 was not submitted to Appeals." <u>Gentile v. Commissioner</u>, T.C. Memo. 2013-175, 106 T.C.M. (CCH) 75, 77, <u>aff'd</u>, 592 F. App'x 824 (11th Cir. 2014). In its hearing request petitioner asserted that the levy "would create an undue economic hardship," apparently referring to section 6343(a)(1)(D). But "economic hardship" relief from a levy is available only to individual taxpayers, not to corporations. <u>See</u> <u>Lindsay Manor Nursing Home, Inc. v. Commissioner</u>, 148 T.C. 235 (2017), <u>vacated on other grounds</u>, 725 F. App'x 713 (10th Cir. 2018); sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs. In any event petitioner has not advanced that argument in this Court.

**[\*10]** the Commissioner's discretion.  See Thompson v. Commissioner, 140 T.C. 173, 179 (2013); sec. 301.6159-1(a), (c)(1)(i), Proced. & Admin. Regs.; see also Rebuck v. Commissioner, T.C. Memo. 2016-3; Kuretski v. Commissioner, T.C. Memo. 2012-262, aff'd, 755 F.3d 929 (D.C. Cir. 2014).

This Court gives due deference to the determinations the SO makes in the exercise of this discretionary authority.  See Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Marascalco v. Commissioner, T.C. Memo. 2010-130, aff'd, 420 F. App'x 423 (5th Cir. 2011).  We will not substitute our judgment for that of the SO, recalculate a taxpayer's ability to pay, or independently determine what would be an acceptable collection alternative.  See Thompson, 140 T.C. at 179; Murphy, 125 T.C. at 320; O'Donnell v. Commissioner, T.C. Memo. 2013-247, 106 T.C.M. 477, 481; Lipson v. Commissioner, T.C. Memo. 2012-252, 104 T.C.M. (CCH) 262, 264.  Rather, our review is limited to determining whether the SO abused her discretion, that is, whether her decision to reject the taxpayer's proposal was arbitrary, capricious, or without sound basis in fact or law.  See Thompson, 140 T.C. at 179; Murphy, 125 T.C. at 320.  If the SO "followed all statutory and administrative guidelines and provided a reasoned, balanced decision, the Court will not reweigh the equities."  Thompson, 140 T.C. at 179.

[*11] Petitioner's final proposal was an installment agreement under which it would pay $5,500 per month, relying on financial information reporting average net income of $5,624 per month. The SO questioned that premise, noting the lack of support for almost $83,000 of monthly expenses and uncertainty concerning the ownership of real property. The SO assigned a revenue officer to analyze petitioner's financial situation and discuss his conclusions during a three-way conference call. Petitioner did not call in for that conference call, continuing a pattern of noncompliance with deadlines the SO had set for submitting and reviewing petitioner's financial information.

The SO noted that petitioner had a "chronic history of non-compliance" extending over a period of at least eight years. The IRS had contacted petitioner regularly during that period but had "received excuses and promises but no tax returns," with petitioner "return[ing] calls only when action was imminent." The SO accurately characterized petitioner as a repeat offender and cited an IRM provision advising that "[t]axpayers identified as repeaters may not immediately be granted installment agreements." IRM pt. 5.14.7.2(1)(c); see IRM pt. 5.7.8.2, 5.7.8.3 (Mar. 9, 2017). An SO does not abuse her discretion by adhering to IRM provisions governing acceptance of collection alternatives. See Veneziano v. Commissioner, T.C. Memo. 2011-160, 102 T.C.M. (CCH) 22, 24; Etkin v. Commissioner,

[*12] T.C. Memo. 2005-245, 90 T.C.M. (CCH) 417, 421; Schulman v.

Commissioner, T.C. Memo. 2002-129, 83 T.C.M. (CCH) 1738, 1742 n.6.

Petitioner's outstanding tax liabilities when the SO closed the case totaled

$4,757,745, and petitioner proposed to discharge these liabilities by paying $5,500

per month. Petitioner did not submit an OIC, and it was not proposing a "partial

pay" installment agreement, which would be subject to special procedures.[5] Given

the magnitude of petitioner's outstanding liability, coupled with its history of non-

compliance, the SO did not abuse her discretion in concluding that petitioner's

overall proposal "lacked credibility." We will therefore grant summary judgment

for respondent and sustain the proposed collection action.

To implement the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered for respondent</u>.

---

[5]The IRS may enter into a partial payment installment agreement (PPIA) when full payment cannot be achieved within the statutory collection period. IRM pt. 5.14.2.1 (Mar. 11, 2011). However, before a PPIA may be approved a number of additional requirements must be met, including an investigation of whether the taxpayer can sell or borrow against assets in order to make payments. IRM pt. 5.14.2.1.1 (Sept. 19, 2014).